CHARLES HARWARD *et al.*

*v.*

THE ST. CLAIR AND MONROE LEVEE AND DRAINAGE

COMPANY *et al.*

1. PRIVATE CORPORATION—*what constitutes.* " The St. Clair and Monroe Levee and Drainage Company," incorporated by the act of February 16, 1865, for the purpose of leveeing and draining a certain district therein named, is under the exclusive control of the corporators themselves, and vacancies occurring among them to be filled at the discretion of the survivors; the act was never submitted to a vote of the people to be affected by it, but the sole charter of the authority thereby conferred, is the act itself. Although the object of the corporation, when accomplished, would be a public benefit, yet the corporation itself, in its composition and management, is strictly private.

2. TAXATION FOR " CORPORATE PURPOSES"—*upon whom the power may be conferred—constitutional limitations.* The 5th section of the 9th article of our Constitution, which provides that " the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes," not only limits local or corporate taxation to local or corporate purposes, but was also intended as a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities of the municipality or district to be taxed.

3. Under our Constitution, the right of taxation can not be granted either to private persons or private corporations.

4. So much of the act incorporating " The St. Clair and Monroe Levee and Drainage Company," as undertakes to confer upon that company the power to levy a tax upon property within the designated district, to carry out the object of its incorporation, is in violation of the Constitution, the members of the company not being " corporate authorities" of the district to be affected by their action, the corporation being merely a private corporation.

5. " CORPORATE AUTHORITIES "—*who constitute.* By the phrase " corporate authorities," as used in the Constitution, must be understood those municipal officers who are either directly elected by the population sought to be taxed by them, or appointed in some mode to which they have given their assent.

6. Eminent domain—*of its application.* The doctrine of eminent domain is strictly applicable only to the condemnation of property, and not to the levy and collection of a tax.

7. Where the legislature incorporated a company whose object was to levee and drain a certain district of overflowed lands, the attempt to give to such corporation, which was a mere private corporation, the power to levy a tax upon the lands deemed by the corporators to be benefited by the proposed improvement, could not properly be referred to the doctrine of eminent domain, because the just compensation required to be made, in the exercise of that right, must be determined by some impartial agency, and not by those interested thereby in replenishing their own treasury. That would be merely the taking of the property of one man to give it to another.

8. Joinder of parties—*in chancery.* Where a tax is sought to be levied without authority, several property owners, having a common interest in the subject, and asking relief against the same injury, on the same ground, may join in a bill to enjoin its collection.

Appeal from the Circuit Court of Monroe county; the Hon. Silas L. Bryan, Judge, presiding.

This suit was begun by bill in equity, filed in the Circuit Court of Monroe county, praying an injunction to restrain the collection of certain taxes or assessments, levied by William Wilson, sen., Sidney Todd, William B. Quigley, William Kinney and Hyacinthe Demete, commissioners appointed under and acting by virtue of the powers granted by an act of the general assembly of Illinois, entitled "An Act to provide for the constructing of a levee from Prairie du Pont village, in St. Clair county, to Harrisonville, in Monroe county," approved February 24th, 1859; and of an act to amend that act, approved February 16, 1865, declaring the commissioners appointed by virtue of the amended act a body corporate, under the name and style of "The St. Clair and Monroe Levee and Drainage Company;" and of an amendment to the amendment, approved February 22, 1867, legalizing the assessments made by the commissioners, and authorizing proceedings to collect unpaid taxes levied under sec. 31 of the act of February 16th, 1865.

A further statement of the facts necessary to a full understanding of this case will be found in the opinion.

Mr. THOMAS G. ALLEN, for the appellants.

Mr. WM. H. UNDERWOOD, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

By an act of the legislature, approved February 24, 1859, entitled " An Act to provide for constructing a levee from Prairie Du Pont village, in St. Clair county, to Harrisonville, in Monroe county," five persons named in the act were appointed commissioners to construct the levee, and authorized to ascertain what lands between the river and the bluffs, in the designated district, were liable to overflow, and to levy a tax against the owners of not more than one dollar per acre, for the purpose of carrying out the objects of the act. By another act, passed February 16, 1865 (Pr. Laws of 1865, vol. 2, page 2), these commissioners were declared to be a body corporate, under the name of " The St. Clair and Monroe Levee and Drainage Company," with perpetual succession, and power to hold real and personal property. The act defines the object of the incorporation to be, to levee and drain a certain district defined in the act, and comprising portions of St. Clair and Monroe counties, and it authorizes the company to assess an annual tax of $20,000 upon the lands in the designated district, in proportion to the benefits to accrue to each tract, and where no benefit is to arise, the land not benefited is not to be assessed. Of this the corporation is left to be the sole judge, as no mode is pointed out for determining that question. The act was never, in any mode, submitted to a vote of the inhabitants of the district embraced in the bill, and the property holders who are to be taxed have no voice in the control of the company, the selection of its officers, or the imposition of a tax. If a vacancy occurs among the corporators, it must be

filled at the discretion of the survivors, as no other mode is pointed out, and the corporation is expressly endowed with perpetual succession.   Although the object of the corporation will be, when accomplished, a public benefit, yet the corporation itself, in its composition and management, is strictly private.   The public, or the persons to be taxed, have no more voice in its control than they have in the management of our railroads and banks.   The five persons who constitute this corporation are clothed by this act, if it is valid, with the right to erect and keep up a levee for a certain distance along the Mississippi river, to cause as much or as little work to be done as they may see proper, to collect an annual tax of $20,000, and enforce its payment by the sale of the real estate upon which, in the discretion of the company, it is levied, and to do all this without rendering any account, or incurring any species of responsibility, either to the persons who pay the tax or to any others; and these powers and privileges are conferred without limitation of time.

The bill in the record before us was filed by certain property holders of the district in question, to enjoin the collection of a tax imposed by this company.   A demurrer to the bill was sustained, and the complainants appealed.

The mere statement of the substance of this extraordinary legislation would seem almost sufficient, of itself, for a disposition of this case, but we will briefly declare the grounds upon which this tax must be held illegal.

The 5th section of the 9th article of our Constitution, provides that "the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

We believe it has always been understood, that this clause limited local or corporate taxation to local or corporate purposes, and it has always been so construed whenever its construction has come before this court.   This case presents,

the question, whether it was not also intended as a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities.

Without expressing an opinion as to the power of the legislature, itself, directly to impose a corporate tax for a corporate purpose, and without denying its power to create a district for special purposes, from portions of contiguous counties or towns, and providing for the election or appointment, in some proper mode, of public officers in such district, to be clothed with the power of levying taxes for such special purposes, we nevertheless are clearly of the opinion, that this clause does forbid the legislature to grant the power of such local or corporate taxation to any other persons than the local or corporate authorities.    Under our constitution, the right of taxation can not be granted either to private persons or private corporations.

Our reasons for this opinion are two-fold.

The clause in question was not in the former constitution, and yet the right of the legislature, under that constitution, to vest in municipal corporations the power of taxation for local or corporate purposes, was constantly exercised and never denied or doubted.    It is evident, then, this clause was not inserted in the persent constitution as a necessary grant of power, or to remove a doubt as to its existence.    It is therefore a just inference that its purpose was to define the class of persons to whom the right of taxation might be granted, and the purposes for which it might be exercised, and when the legislature seeks to grant it to any other than corporate authorities, or for corporate purposes, it transgresses the limit of its power.    If the clause in question was not designed as a limitation of power, no reason can be given why it was inserted in the constitution at all.

Our second reason for holding it a limitation is, because of the intrinsic wisdom of the clause when thus construed. While the clause, viewed as a grant of power, would have been a mere waste of words in an instrument whose framers

must necessarily have sought to avoid a single superfluous expression, if viewed as a limitation, it commands the cordial approval of our reason, as a judicious safeguard of private rights.

The power of taxation is, of all the powers of government, the one most liable to abuse, even when exercised by the direct representatives of the people, and if committed to persons who may exercise it over others without reference to their consent, the certainty of its abuse would be simply a question of time. No person or class of persons can be safely entrusted with irresponsible power over the property of others, and such a power is essentially despotic in its nature, and violative of all just principles of government. It matters not that, as in the present instance, it is to be professedly exercised for public uses, by expending for the public benefit the tax collected. If it be a tax, as in the present instance, to which the persons who are to pay it have never given their consent, and imposed by persons acting under no responsibility of official position, and clothed with no authority, of any kind, by those whom they propose to tax, it is, to the extent of such tax, misgovernment of the same character which our forefathers thought just cause of revolution. We are of opinion that we do no violence to the language of the clause in the constitution we have been considering, by holding that it was designed to prevent such ill-advised legislation as the delegation of the taxing power to any person or persons other than the " corporate authorities" of the municipality or district to be taxed. These authorities are elected by the people to be taxed, or appointed in some mode to which the people have given their assent, and to them alone can this power be safely delegated.

This construction of the constitution is decisive against the validity of the tax under consideration, for it can not be, and is not claimed, that this drainage incorporation, or the persons who compose it, are the corporate authorities, in any sense, of the district over which the act in question seeks to give them the power of taxation. As already said, the persons to be

taxed have never given their assent to this act, and have had no voice in the selection of the members of this corporation. As the object of this constitutional clause was to prevent the legislature from granting the power of local taxation to persons over whom the population to be taxed could exercise no control, it is evident that, by the phrase "corporate authorities," must be understood those municipal officers who are either directly elected by such population, or appointed in some mode to which they have given their assent. Another reason why the members of this drainage company can not be considered corporate authorities is, that the Constitution prohibits the legislature from appointing to office, and if these persons are corporate authorities, they have been appointed to that position by the legislature.

Reference has been made, by counsel for the defendants, to the cases of *Shaw* v. *Dennis*, 5 Gilm. 405, and *Dennis* v. *Maynard*, 15 Ill. 477. The law under consideration in those cases was passed before the adoption of our present Constitution, and the levy of the taxes, the validity of which was in dispute, was also made before that time. Both cases were the same; the judgment of the circuit court having been reversed in *Shaw* v. *Dennis*, and the case remanded, and after a second trial it again came to this court, and is reported under the name of *Dennis* v. *Maynard*. They have no bearing, therefore, upon the construction of our present Constitution. Moreover, by the act of the legislature then under consideration, although the first bridge commissioners were named by the act, their successors were to be chosen by the people of Rockford on the first Monday of August following the passage of the law, and annually thereafter.

But it is urged that this tax, if not sustainable strictly as a tax, may be justified as an exercise, by the legislature, of the right of eminent domain. This court has been inclined to refer to the right of eminent domain the power of municipal corporations to make special assessments for local improvements, and it is said this is only a power of the same character.

But it is vain to attempt a justification of this act on that ground. A just compensation for the property taken is made, by the Constitution, an indispensable requisite to the exercise of this power, and what shall be a just compensation can necessarily be determined only by some impartial agency. But by this act the very persons who levy the tax for the benefit of their own treasury, are the persons who decide upon the extent of the benefits to be conferred upon each parcel of land, and thus determine in their own discretion the amount which each land owner is to pay. It is as if the legislature should authorize a railway company, in condemning land for its right of way, to determine for itself to what extent the owners of the land condemned should be considered as paid by the special benefits to be derived from the construction of the road, and when the legislature undertakes to permit this, instead of exercising the right of eminent domain, in the proper sense of that phrase, it is merely taking the property of one man to give it to another.

It is said this is a public improvement very desirable to be made, and that it is only equitable to tax the cost of the improvement upon the lands to be redeemed from overflow, if they are benefited to that extent. We admit all this, but nevertheless, the improvement can not be made at the sacrifice of those great principles upon which private rights repose for their security, and which are secured by the solemn guaranties of the Constitution. The proper mode of accomplishing the object sought by this act is not difficult to find. If the legislature should authorize drainage commissioners to be elected by the people of these counties, with power to determine for each year the sum to be expended in the construction of levees, and to assess that sum as a tax upon the lands to be benefited thereby, to the extent of the benefits conferred, we see no reason why the desired improvement might not be effected, without doing violence to the Constitution, or to the principles of just taxation. Such commissioners would be corporate authorities, within the meaning of the Constitution, and a tax

assessed upon each tract only to the extent of the benefits conferred, would be no violation of the principles of equality and uniformity.  Such a law would be sustainable without reference to the doctrine of eminent domain, which is liable to be so much abused if applied to the collection of money in the name of a tax, and which is strictly applicable only to the condemnation of property.  As was said in the case of *The City of Chicago* v. *Larned*, 34 Ill. 282, " assess to each lot the special benefits it will derive from the improvement, charging such benefits upon the lots, the residue of the cost to be paid by equal and uniform taxation.  In this way the demands of the Constitution may be fulfilled, and injustice done to no one."

The objection that the bill is multifarious, is not well taken. The complainants have a common interest in the subject matter of the suit.  They ask the same relief against the same injury, on the same grounds.  To compel each one to file a separate bill would lead to a multiplication of suits wholly unnecessary.  The demurrer to the bill should have been overruled.

The decree must be reversed.

*Decree reversed.*