## ANDERSON v. SANTA ANNA.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS..

Argued November 25, 1885.—Decided January 4, 1886.

When, at the time of creating and issuing a negotiable evidence of indebtedness of a municipal corporation in a State, the highest court of a State has construed the law under which it purports to be issued, rights accruing under that construction will not be affected merely by subsequent decisions of the same court, varying or departing from it.

When negotiable evidences of indebtedness of a municipal corporation in a State are created and issued under laws which have not, at the time of issue, been construed by the highest court of the State, its subsequent construction of them is not conclusive on Federal courts, although they will lean to an agreement of views with the State court.

This was a suit at law to recover on municipal bonds issued in payment of a subscription to railroad stock. The facts which make the case are stated in the opinion of the court.

*Mr. Lawrence Maxwell, Jr.*, for plaintiff in error. *Mr. William M. Ramsey* and *Mr. George W. Gere* also filed a brief for same.

No appearance for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

This is an action to recover from the township of Santa Anna, established under the general township organization laws of Illinois, the amount of certain negotiable bonds, with interest coupons attached, signed by its supervisor and clerk, and purporting to have been issued by it, on the 1st day of October, 1867, "under and by virtue of a law of the State of Illinois, entitled ' An act to amend the articles of association of the Danville, Urbana, Bloomington and Pekin Railroad Company, and to extend the powers of and confer a charter upon the same,' approved February 28, 1867, and in accordance with the vote of the electors of said township, at the special election held July 21, 1866, in accordance with said act." Each bond, also, recites that the faith of the township is "pledged for the payment of said principal sum and interest."

The Circuit Court sustained a demurrer to the declaration and amended declaration, and gave judgment for the township.

The act of February 28, 1867, empowered the railroad company to locate and construct a railroad from Pekin, in Tazewell County, through, or as near to as practicable, certain named towns, to the eastern boundary of the State of Illinois. For the purpose of aiding in its construction, authority was given to incorporated towns or townships in counties acting under the township organization law, along the route of the road, to subscribe to the capital stock of the company in any sum not exceeding $250,000.

By the 13th section of the act it is provided:

" § 13. No such subscription shall be made until the question has been submitted to the legal voters of such incorporation, town, or township in which the subscription is proposed to be made; and the clerk of each of said towns or townships is hereby required, upon the presentation of a petition signed by at least ten citizens, who are legal voters and tax-payers of such town or township for which he is clerk, and in which petition the amount proposed to be subscribed shall be stated, to post up notices in at least three public places in each town or town-

ship ; which notice shall be posted not less than thirty days before the day of holding such election, notifying the legal voters of such town or township to meet at the usual place of holding elections in such town or township, or some other convenient place named in such notice, for the purpose of voting for or against such subscription : *Provided*, That where elections may have already been held, and the majority of the legal voters of any township or incorporated town were in favor of a subscription to said railroad, then and in that case no other election need be had, and the amount so voted for shall be subscribed as in this act provided. And such elections are hereby declared to be legal and valid, as though this act had been in force at the time thereof and all the provisions hereof had been complied with."

The pleadings allege that on the 21st of July, 1866, the township of Santa Anna, through which the road passed, " held a special election upon the question of subscribing the sum of $50,000 to the capital stock of said Danville, Urbana, Bloomington and Pekin Railroad Company, at which said election a majority of the legal voters of said township voted for and were in favor of a subscription to the capital stock of said railroad company, by the said township," of the said sum ; that, on the 1st of October, 1867, in pursuance of said vote, and of said act of February 28, 1867, the then supervisor of the township subscribed, in its name, the sum of $50,000, receiving from the railroad company, for the township, proper certificates of stock, and, in connection with the township clerk, and in payment for such stock, executing and delivering to the company the bonds and coupons in suit ; that the township, for nine consecutive years, regularly and annually assessed taxes to meet the interest on said bonds, and paid the same over without objection ; that on the first day of December, 1868, the plaintiff purchased the bonds in suit at their par value from one Tiernan, to whom they had been sold by the company ; that on the first Monday of September, 1869, and subsequently, the township, by its proper officers, participated, as a stockholder, in sundry meetings of the company's stockholders; that on the 28th of October, 1871, its then supervisor caused

the bonds to be registered in the office of the auditor of public accounts of Illinois, who endorsed on each bond his certificate to the effect that it had been registered in his office pursuant to the act of April 16, 1869, to fund and provide for paying the railroad debts of counties, townships, cities, and towns; and that on the 1st day of July, 1874, the township exchanged this stock for a like amount of stock in another corporation, the Indianapolis, Bloomington and Western Railroad Company, which latter stock, during the time the township has held and owned it, has been worth as much as fifty per cent. of its par value.

The record does not disclose the particular ground upon which the Circuit Court sustained the demurrer, and gave judgment for the township. But we cannot understand how that result was possible, except upon the hypothesis that the act of February 28, 1867, legalizing elections previously held, at which a majority of the legal voters of a township declared in favor of a subscription to the stock of this company, was unconstitutional. But the constitutionality of that very statute, in respect of the clause now before us, was directly sustained by this court in *St. Joseph Township* v. *Rogers*, 16 Wall. 644, 663. The question there was as to the validity of bonds issued by a township on the 1st of October, 1867, to the Danville, Urbana, Bloomington and Pekin Railroad Company, under the authority of the before-mentioned act of February 28, 1867, and in accordance with a popular vote at an election held in August, 1866. It was there contended that the act was unconstitutional and void, as creating a debt for a municipality, against its will expressed in a legal manner. There, as here, the election referred to in the bonds was held without authority of law. But the court, speaking by Mr. Justice Clifford, said, that, according to repeated decisions of the Supreme Court of Illinois and of this court, defective subscriptions of the kind there made "may, in all cases, be ratified where the legislature could have originally conferred the power,"—citing, among other cases, *Cowgill* v. *Long*, 15 Ill. 202, and *Keithsburg* v. *Frick*, 34 Ill. 405.

In *Cowgill* v. *Long*, 15 Ill. 202, 204, it appears that a statute

of Illinois authorized the legal voters of any school district to
meet together at a certain time in any year and determine by
vote whether a tax should be levied for the support of common
schools, for building and repairing school-houses, or for other
school purposes. The inhabitants of a district held an election
and voted a tax for the purpose of erecting a school-house.
The tax was assessed and steps were taken for its collection.
But as the election was not held at the time directed by the stat-
ute, certain tax-payers, whose property was levied on and was
about to be sold, instituted a suit to enjoin the sale. Pending
that suit, the legislature passed an act declaring the vote and
tax "to be good, valid, and effectual in law and in equity," and
legalized what had been done by the local officers in reference
to the assessment of the tax. The court held that although the
tax was voted at a time not authorized by law, and was not so
certified as to become a valid tax, "it was clearly competent
for the legislature to remedy those defects, while the tax re-
mained uncollected." "Laws of this character," said Chief
Justice Treat, delivering the unanimous opinion of the court,
"are often passed to secure the collection of taxes defectively
levied, and there can be no serious objection to their validity."

In *Keithsburg* v. *Frick*, above cited, 34 Ill. 405, 421, one of
the questions presented was as to the validity of an act of 1857,
giving a special charter to the town of Keithsburg, and confer-
ring upon it authority to subscribe stock to a certain railroad
company, and at the same time legalizing and confirming a
previous subscription to the stock of the same corporation by
the town while acting under the general incorporation law for
towns and cities. The court, speaking by Mr. Justice Breese,
said : "If the subscription was made under the organization
allowed by the general incorporation law of 1849, the 17th
section of the act of 1857 legalizes and confirms it. The sub-
scription, therefore, was good if made under the act of 1857,
as an original subscription under the second section, or as a
subscription made under the act of 1849, confirmed as it is by
the 17th section of the act of 1857. The bonds may be re-
garded as issued by the old corporation, confirmed by the new
act, or as a new issue under the second section of the act of 1857."

In *Schofield* v. *Watkins*, 22 Ill. 66, 73, one of the questions. was as to the constitutionality of a statute which legalized the acts and proceedings of certain school district trustees in uniting districts and levying and collecting taxes for building houses, and for the support of schools therein, and provided that all proceedings may be had in the same manner as if those proceedings had been strictly regular and legal. The court said, by Walker, J., that there could be no doubt that "the legislature have the power to form a school·district, or may legalize the acts of officers in attempting to form a district, so as to render such district legal. . . . And the power to cure irregularities in the manner of levying a tax is equally undoubted, and, so far as this tax was levied for the purposes specified in the act, there is no doubt that the levy is thereby made valid."

These cases were all determined before the bonds in suit were issued. While they are not analogous in every respect to the one before us, they seem to rest upon the principle that the legislature when not restricted by the Constitution, may, by retroactive statutes, legalize the unauthorized acts and proceedings of subordinate municipal agencies, where such acts and proceedings would have been valid if done under legislative sanction previously given. The decision in *St. Joseph Township* v. *Rogers*, only gave effect to principles announced by the State court prior to the issuing of the bonds. If, according to the law of Illinois, as declared by its highest court at the time the bonds in suit were issued, the act of February 28, 1867, was a valid exercise of legislative power, the rights of the purchasers or holders could not be affected merely by subsequent change of decision. For it is the long-established doctrine of this court—from which, as said recently in *Green County* v. *Conness*, 109 U. S. 105, we are not disposed to swerve—that where the liability of a municipal corporation upon negotiable securities depends upon a local statute, the rights of the parties are to be determined according to the law as declared by the State courts at the time such securities were issued. In *Douglass* v. *County of Pike*, 101 U. S. 677, the Chief Justice said: "After a statute has been settled by judi-

cial construction, the construction becomes, so far as contract rights are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in effect on contracts as an amendment of the law by means of a legislative enactment." See also *County of Ralls* v. *Douglass*, 105 U. S. 728, 732; *Olcott* v. *Supervisors*, 16 Wall. 678; *City* v. *Lamson*, 9 Wall. 477, 485; *Boyd* v. *Alabama*, 94 U. S. 645; *Taylor* v. *Ypsilanti*, 105 U. S. 60, 71; *Thompson* v. *Lee County*, 3 Wall. 327, 330; *Brown* v. *Mayor*, 63 N. Y. 239, 244; Cooley's Const. Lim. 474, 477, 4th Edit.; Dillon's Mun. Corp. § 46.

If, however, we are in error in our interpretations of the decisions in *Cowgill* v. *Long*, *Schofield* v. *Watkins*, and *Keithsburg* v. *Frick*, it results that when the bonds were executed there was no decision of the State court in reference to the power of the legislature to enact the statute of February 28, 1867. In that case, the duty of this court is to determine, upon its independent judgment, what was the law of Illinois when the rights of the parties accrued. In *Burgess* v. *Seligman*, 107 U. S. 20, 33, the court had occasion to re-examine all its prior adjudications concerning the obligation of the Federal courts to follow the decisions of the State courts upon questions of local law. Mr. Justice Bradley, speaking for the whole court, after observing that the Federal courts had an independent jurisdiction in the administration of State laws, coördinate with, and not subordinate to, that of the State courts, and are bound to exercise their own judgment as to the meaning and effect of these laws, said: " So, when contracts and transactions have been entered into, and rights have accrued thereon, under a particular state of the decisions, or where there has been no decision of the State tribunals, the Federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the State courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the Federal courts will lean to an agreement of views with the State courts if the question seems to be balanced with doubt." Any other rule, it was

further said, would defeat " the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between citizens of different States."

Assuming, then, for the purposes of this case, that the question of legislative power as here presented had not, when the bonds in suit were issued, been finally determined by the State court, we perceive no reason to doubt the correctness of the decision upon this point in *St. Joseph Township* v. *Rogers*. It is not claimed that the constitution of Illinois, in terms, forbade retrospective legislation. But the statute in question is supposed to be obnoxious to that clause which provides that " the corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes." Numerous decisions of the State court, to which our attention was called in other cases, construe that provision as defining not simply the class of municipal officers upon whom the power of taxation, for local purposes, may be conferred, but the purposes for which that power may be exerted. Those decisions are to the effect, that, within the meaning of the constitution, the corporate authorities of a township, like Santa Anna, are the electors, and that while the construction of a railroad, through or near the township, would be a corporate purpose within the meaning of that instrument, a debt for that object could not be imposed upon it without the consent of its corporate authorities, that is, without the consent of the electors. These principles fall far short of sustaining the proposition that the curative clause of the act of February 28, 1867, was unconstitutional; for, the legislature did not, in any just sense, impose a debt upon Santa Anna Township against the will of its corporate authorities, the electors. The act embraces only townships which, by a majority of their legal voters, at an election previously held, had declared for a subscription. That such majority was given at an election held by the township in the customary form is averred in the declaration and is admitted by the demurrer. The curative act only gave effect to the declared will of the electors. As the constitution of the State did not provide any particular mode in which the corporate authorities of a township should manifest their

willingness or desire.to incur a municipal debt for railroad purposes, we perceive no reason why the action of the majority of legal voters, at an election held in advance of legislative action, might not be recognized by the legislature and constitute the basis of its subsequent assent to the creation of such indebtedness, and its ratification of what had been done. In *Grenada County* v. *Brogden*, 112 U. S. 261, 271, where somewhat the same question was involved, we said : " Since what was done in this case by the constitutional majority of qualified electors and by the board of supervisors of the county would have been legal and binding upon the county had it been done under legislative authority previously conferred, it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions upon such legislation, equivalent to original authority." See also *Thompson* v. *Perrine*, 103 U. S. 806, 815 ; *Ritchie* v. *Franklin*, 22 Wall. 67 ; *Thompson* v. *Lee County*, above cited ; *City* v. *Lamson*, above cited ; *Campbell* v. *City of Kenosha*, 5 Wall. 194 ; *Otoe Co.* v. *Baldwin*, 111 U. S. 1, 15. The same principle was announced by the Supreme Court of Illinois in a very recent case— *U, S. Mortgage Co.* v. *Gross*, 93 Ill. 483, 494—involving the constitutionality of a statute of Illinois which was retrospective in its operation. "Unless," said the court in that case, "there be a constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes to validate invalid contracts or to ratify and confirm any act it might lawfully have authorized in the first instance." It cannot be denied that the legislature could lawfully have authorized a subscription by Santa Anna Township to the stock of this road, upon the assent, in some proper form, of a majority of its legal voters. The act of 1867 interfered with no vested right of the township ; for, as an organization entirely for public purposes, it had no privileges or powers which were not subject, under the Constitution, to legislative control. The statute did nothing more than to ratify and confirm acts which the legislature might lawfully have authorized in the first instance.

We infer from the arguments before us that the Circuit Court felt obliged by the decision in *Township of Elmwood* v. *Marcy*,

92 U. S. 289, to hold the act of February 28, 1867, to be un-constitutional.   In that case, the main question was as to the liability of Elmwood Township upon bonds issued, in its name, by its supervisor and town clerk, under the authority, not of that act, but of one passed April 17, 1869, which legalized and confirmed, and declared to be binding upon the township, an additional subscription to the stock of the Dixon, Peoria and Hannibal Railroad Company, pursuant to the vote of a majority of legal voters of the township at an election held at a time when the town had exhausted its power to subscribe.   The bonds then in suit were issued on the 27th of April, 1869.   The majority of the court, in that case, held the act of April 17, 1869, to be unconstitutional, entirely upon the authority of *Harward* v. *St. Clair Drainage Co.* 51 Ill. 130; *People* v. *Mayor,* 51 Ill. 17; *Hessler* v. *Drainage Commissioner,* 53 Ill. 105; *Lovingston* v. *Wider,* 53 Ill. 302; *Marshall* v. *Silliman,* 61 Ill. 218; and *Wiley* v. *Silliman,* 62 Ill. 170.   We have already seen that *St. Joseph* v. *Rogers, ubi supra,* maintained the validity of the very act now before us, upon the authority, as well of the then existing law of the State as declared by its highest court, as of our own decisions upon the general ques-tion of the power of the legislature to legalize that which it might have originally authorized.   Although the decision in that case was cited by counsel in *Elmwood* v. *Marcy,* the court, in the latter case, did not refer to it or overrule it, but applied to the Elmwood bonds the principles announced in the later decisions of the State court.   While the courts of the United States accept and apply the construction of a State Constitu-tion or of a local statute, upon which the rights of parties de-pend, which has been fixed by the course of decisions in the State court, it is the settled doctrine of this court, that rights accruing under one construction will not be lost merely by a change of opinion in the State court; and where such rights have accrued, before the State court has announced its con-struction, the Federal courts, although leaning to an agreement with the State court, must determine the question upon their own independent judgment.   If the decisions of the State court, commencing with *Harward* v. *St. Clair Drainage Co.,* would,

if applied here, require an affirmance, we cannot depart from the long-established doctrine which makes it our duty to determine the rights of parties, where those rights depend upon the local law, according to that law as judicially declared at the time such rights accrued, or, in the absence of any such declaration, according to the law as, in our judgment, it then was.

We are of opinion that the demurrer should have been over-ruled.

*The judgment is reversed, with directions for further proceedings in conformity with this opinion.*

Confarr *v.* The Township of Santa Anna. In error to the Circuit Court of the United States for the Southern District of Illinois. The judgment in this case is, upon the authority of Anderson *v.* The Township of Santa Anna, just decided,

*Reversed and the cause remanded for further proceedings in conformity with the opinion in that case.*