## BOLLES v. BRIMFIELD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Submitted January 6, 1887. — Decided March 7, 1887.

By the act of the legislature of Illinois incorporating the Dixon, Peoria and Hannibal Railroad Company, passed March 5, 1867, authority was given to certain cities, incorporated towns, and townships, to subscribe to its stock not exceeding $35,000. At an election duly called and held, August 3, 1868, the town of Brimfield voted to subscribe $35,000, and at the same time and place, but without legislative authority therefor, the same electors voted to make an additional subscription of $15,000. March 31, 1869, the legislature passed an act reciting that the latter sum had been voted by a majority of the legal voters in said township at said election, and provided that said election "is hereby legalized and confirmed, and is declared to be binding upon said township in the same manner as if said subscription had been made under the provisions of said charter." The township, by its proper officers, May 5, 1869, issued bonds for both the subscriptions: *Held,*

(1) At the time the bonds were issued there was no decision of the highest court of Illinois denying the power of the legislature, by subsequent enactment, to legalize a municipal subscription to railroad stock which would have been originally lawful if it had been made, in the mode in which it was made, under legislative authority previously granted.

(2) In such case this court is at liberty to exercise its independent judgment as to the validity of such curative statutes.

(3) The act of March 31, 1869, is not in violation of the constitution of Illinois of 1848. It only gave effect to the wishes of the corporate authorities — the electors — of Brimfield, as ascertained in the customary mode.

THIS was an action at law to recover upon bonds and coupons issued by the defendant in error, a municipal corporation.

Demurrer to the declaration which was overruled. Defendant declining to answer further, the action was dismissed, The case is stated in the opinion of the court.

*Mr. Thomas S. McClelland* and *Mr. George A. Sanders* for plaintiffs in error.

*Mr. Henry B. Hopkins* and *Mr. William W. Hammond* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

In *Anderson* v. *Santa Anna*, 116 U. S. 356, 364, we had occasion to consider the validity of so-much of the act of the legislature of Illinois of February 28, 1867, in reference to municipal subscriptions to the stock of the Danville, Urbana, Bloomington and Pekin Railroad Company, as declared that where elections had been held, and a majority of the legal voters of any township or incorporated town declared in favor of a subscription to the stock of that company, "then and in that case no other election need be held, and the amount so voted for shall be subscribed" as in that act provided; further, "that such elections are hereby declared to be legal and valid," as though that act had been in force at the time thereof, and all its provisions had been complied with. An election was held in the township of Santa Anna, July 21, 1866, but there was no authority of law for its being held. It was, however, conducted in the customary mode, and the proposition for a subscription was sustained by a majority of the legal voters of the township. The subscription was made October 1, 1867, in pursuance of that vote, and of the curative act of February 28, 1867. The validity of bonds issued in payment of the subscription was disputed upon the ground that the last named act was in violation of the constitution of Illinois. We held, in accordance with numerous decisions of this court cited in the opinion, that subsequent legislative ratification of the acts of a municipal corporation, which might lawfully have been performed under legislative sanction in the first instance, was equivalent to original authority. We referred, in that case, to

*United States Mortgage Co.* v. *Gross*, 93 Ill. 483, 484, where the Supreme Court of Illinois said, that "unless there be a constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes to validate invalid contracts or to ratify and confirm any act it might lawfully have authorized in the first instance."

As a municipal corporation, organized for public purposes, has, as a general rule, and as between it and the state, no privileges or powers which are not subject at all times, under the Constitution, to legislative control, and as the legislature might legally have authorized a subscription by the township of Santa Anna, with the assent of a majority of its legal voters, we adjudged that the act of February 28, 1867, to be within the constitutional power of the legislature to pass.

Does the present case come within these principles?

By the sixth section of an act of the General Assembly of Illinois, approved March 5, 1867, incorporating the Dixon, Peoria and Hannibal Railroad Company, it is provided that "the several counties in which any part of said road may hereafter be located, and the several townships in said counties which have adopted or may hereafter adopt township organizations, and the cities and incorporated towns in said counties, are hereby authorized to subscribe and take stock in said Dixon, Peoria and Hannibal Railroad Company." 2 Private Laws Ill. 1867, 604, 606. The act restricted a subscription by a county to $100,000, and a subscription by a township, city or town to $35,000.

It is admitted that at an election duly notified and held, on the 3d day of August, 1868, the town of Brimfield, by a vote of one hundred and fifty as against fifty-six, lawfully voted to subscribe $35,000 to the stock of the railroad company, and to issue its bonds therefor. At the same time and place, but without authority of law, an election was held to take the sense of the voters of the town as to an additional subscription by it of $15,000 to the stock of the same company, for which coupon bonds should be issued, payable in ten, fifteen and twenty years. This last proposition was sustained by a vote of one hundred and fifty-three as against fifty-five.

On the 31st of March, 1869, the General Assembly of Illinois passed an act declaring "that a certain election, held in the township of Brimfield, in Peoria County, on the 3d day of August, 1868, at which *a majority of the legal voters in said township*, in special town meeting, voted to subscribe for and take fifteen thousand dollars of the capital stock of the Dixon, Peoria and Hannibal Railroad Company over and above the amount authorized to be taken by the charter of said company, is hereby legalized and confirmed, and is declared to be binding upon said township, and may be collected from said township, in the same manner as if said subscription had been made under the provisions of said charter." 3 Priv. Laws Ill. 1869, 372.

Subsequently, May 5, 1869, the township, by its proper officers, issued to the company its coupon bonds for $35,000, in pursuance of the vote at the first-named election, and also its coupon bonds for $15,000, pursuant to the above vote at the same time and place, payable in ten, fifteen and twenty years as aforesaid.

The present suit is upon bonds and coupons of the latter issue. A demurrer to a special plea setting forth these facts was overruled, and, the plaintiff electing to stand by the demurrer, the action was dismissed.

From this statement of the case, it is apparent that the judgment below is inconsistent with the decision in *Anderson* v. *Santa Anna.* It is not disputed that the bonds in suit would be valid obligations of the town of Brimfield if the election of August 3, 1868, at which they were voted, had been previously authorized by statute. In other words, according to the settled doctrines of the Supreme Court of Illinois, it would have been competent for the legal voters of the town, under legislative authority for that purpose previously given — such voters being its "corporate authorities" in the meaning of the state constitution as interpreted by the highest court of Illinois — to have required the subscription to be made, and the bonds to be issued, which were in fact made and issued pursuant to the unauthorized election of August 3, 1868. The question, then, is, could the legislature, by subsequent ratification, make that legal which was originally without legal sanction, but which

it might, in the first instance, have authorized? A negative answer to this question would be in conflict with numerous decisions of this court upon the general question as to the power of a legislature to enact curative statutes, when not restrained by constitutional provisions — the last of those decisions being *Anderson* v. *Santa Anna.* We adhere to what has been heretofore said by this court upon that subject; and, in doing so, we do not infringe upon the rule that, in respect to rights arising under, and depending upon the interpretation of, the constitution and laws of a state, this and other courts of the United States will accept as controlling the established doctrines of the highest court of the state, as announced before such rights accrued. *Burgess* v. *Seligman*, 107 U. S. 20, 33 ; *Carroll County* v. *Smith*, 111 U. S. 556, 563. Previous to the issuing of the bonds in suit, May 5, 1869, there had been no decision of the Supreme Court of Illinois to the effect that it was beyond the power of the legislature to enact such a statute as that of March 31, 1869, or that the legislature could not ratify and confirm such acts of a municipal corporation as would have been lawful if done under previous legislative authority. On the contrary, its decisions prior to that time, as we endeavored to show in *Anderson* v. *Santa Anna*, tended to sustain the validity, in such cases, of retroactive legislation. The first direct decision of the state court, so far as we are aware, adverse to the validity of such legislation, was *Silliman* v. *Marshall*, 61 Ill. 218, 226, determined in 1871, after the bonds in suit were issued. The cases of *People ex rel. McCagg* v. *Mayor of Chicago*, 51 Ill. 17, *People ex rel. Wilson* v. *Solomon*, 51 Ill. 37, *People ex rel. South Park Comm'rs* v. *City of Chicago*, 51 Ill. 58, *Harward* v. *St. Clair, &c., Drainage Co.*, 51 Ill. 130, and other cases of that class cited by counsel, do not touch the question before us; for they decide, in effect, nothing more than that the power to levy taxes for local purposes could be conferred only upon the corporate authorities of the municipal body to be affected thereby — the object of the constitutional provision that "the corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate

purposes," being to define as well the class of municipal officers upon whom the power of taxation for local purposes might be conferred, as the purposes for which such power could be constitutionally exercised. *Quincy* v. *Cooke*, 107 U. S. 549, 554.

So that, substantially the same question is presented here that arose in *Anderson* v. *Santa Anna.* Having a clear conviction that the legislature did not transcend its power in enacting the statute of March 31, 1869, and there being, to say the least, at the time the bonds in suit were issued, no adjudication to the contrary in the Supreme Court of Illinois, we cannot surrender our judgment upon that question and overrule the settled doctrines of this court, in deference to decisions by the state court, made long after the rights of the plaintiff accrued. *Burgess* v. *Seligman,* *Carroll County* v. *Smith,* and *Anderson* v. *Santa Anna.* In holding that the legislature did not violate the constitution of the state in passing the act of March 31, 1869, we do not disregard those decisions of the state court which hold that the legislature cannot impose a debt, for local corporate purposes, upon a municipal body, against the will of its corporate authorities. For, as often held by the state court, the corporate authorities of a town like Brimfield are its legal voters, and they, at the election of August 3, 1868, gave their consent to the subscription and bonds in question. The same voters who approved the subscription of $35,000, at the same time, and by means of the same election machinery, approved an additional subscription for $15,000. There is no suggestion in the record that the votes cast for the latter subscription did not constitute a majority of all the legal voters of the town. We must presume, upon this record, that the legislature ascertained, as stated in the act in question, that such a majority had, at the election of August 3, 1868, voted for the additional subscription of $15,000; and we do not see that the subsequent ratification by the legislature of what had been done by the voters can be regarded as imposing a debt upon them against their will. The legislature simply gave effect to the wishes of the people, as expressed in the customary mode for ascertaining

the popular will. *Grenada County Supervisors* v. *Brogden*, 112 U. S. 261, 262; *Anderson* v. *Santa Anna*, 116 U. S. 356, 364.

*The judgment must be reversed and the case remanded for further proceedings consistent with this opinion. It is so ordered.*