**SUNRAY OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 3059.**

Circuit Court of Appeals, Tenth Circuit.

Feb. 21, 1945.

Rehearing Denied March 16, 1945.

Edward Howell and John M. Wheeler, both of Tulsa, Okl., for petitioner.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John F. Costelloe, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition of the Sunray Oil Company[1] to review a decision of the Tax Court. It involves income taxes for the years 1936 to 1939, inclusive.

During 1936, the State of Oklahoma granted to the taxpayer thirteen oil and gas leases upon tracts of land owned by the state. The taxpayer paid bonuses or advance royalties therefor aggregating $446,000. In 1937, the taxpayer purchased an undivided one-fourth interest in another oil and gas lease upon a tract of state-owned land, paying therefor $77,868.82. In 1937, the taxpayer acquired a three-fourths interest in an oil and gas lease, paying a bonus therefor of $3,750. In 1935, it paid a bonus of $8,500, in 1936 a bonus of $2,000, and in 1937 a bonus of $2,400 for interests in an oil and gas lease. The last two mentioned leases were on privately-owned lands in Oklahoma.

The taxpayer contends that its income from the state leases was immune from taxation under the doctrine of Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815, and Gillespie v. Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338, and that its income from such leases up to March 7, 1938, the date when those decisions were overruled by Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, should be held immune from federal taxation. In other words, that Helvering v. Mountain Producers Corporation, supra, should not be given retrospective application.

The rule of stare decisis is a salutary one, is founded on sound public policy, and should not be lightly disregarded.[2] Nevertheless, it is not inflexible and there is no doubt of the power of a court to depart therefrom and to give retrospective effect to a decision overruling a prior decision.[3] There is no vested right in the decisions of a court and a change of decision does not deprive one of equal protection of the laws or property without due process of law.[4] It is a general rule that

---

[1] Hereinafter called the taxpayer.

[2] Talbot v. Riggs, 287 Mass. 144, 191 N. E. 360, 361, 93 A.L.R. 964; Goodtitle v. Kibbe, 9 How. 471, 50 U.S. 471, 477, 13 L.Ed. 220.

[3] Hertz v. Woodman, 218 U.S. 205, 212, 30 S.Ct. 621, 54 L.Ed. 1001; Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254; Hawkeye Commercial Men's Association v. Christy, 8 Cir., 294 F. 208, 212.

[4] Tidal Oil Co. v. Flanagan, 263 U.S. 444, 450–454, 44 S.Ct. 197, 68 L.Ed. 382; Brinkerhoff-Faris Co. v. Hill, 281 U.S. 673, 681, 50 S.Ct. 451, 74 L.Ed. 1107; Patterson v. Colorado, 205 U.S. 454, 461, 27 S.Ct. 556, 51 L.Ed. 879, 10 Ann.Cas. 689; Bonner v. Gorman, 213 U.S. 86, 91, 29 S.Ct. 483, 53 L.Ed. 709; Milwaukee

the decision of the highest appellate court of a jurisdiction overruling a former decision is retrospective in its operation. In effect, it declares that the former decision never was law.[5] Indeed, the decision in Helvering v. Mountain Producers Corporation, supra, was given retrospective operation in a situation not substantially different from the one here presented. Moreover, the decisions in the Coronado and Gillespie cases had been so limited by subsequent decisions of the Supreme Court, it may be doubted that even prior to the decision in Helvering v. Mountain Producers Corporation, supra, income from leases of the character here involved would have been held to be immune from federal taxation. See dissenting opinion, Mountain Producers Corporation v. Commissioner of Internal Revenue, 10 Cir., 92 F.2d 78, 81.

The taxpayer relies on certain earlier decisions where federal courts chose to follow earlier rather than later decisions of state courts as correct expositions of state law.[6] In those cases the federal courts exercising jurisdiction in diversity of citizenship cases held themselves free to decide what the state law was, and to enforce it as laid down by state court decisions handed down before, rather than those handed down after, the contracts involved were made.[7] But that freedom of choice between earlier and later decisions of state courts no longer obtains since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Accordingly, we conclude the income from the state leases was subject to federal taxation.

The taxpayer contends that it is entitled to exclude from its gross income in the computation of its income tax an aliquot part of the bonuses or advance royalties paid by it to the lessors. The Commissioner and the Tax Court held that the portions of the advance royalties allocable to the products sold during the taxable years in question should be excluded from the taxpayer's gross income from the property for those years in the computation of percentage depletion, but that such portions should be included in its gross income under § 22 (a) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Code, § 22(a).

Section 23(m) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Code § 23(m), which provide for deductions from gross income, in part, read:

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar condition in each case; * *."

Section 114(b)(3) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev. Code, § 114(b)(3), provide:

"In the case of oil and gas wells the allowance for depletion under section 23(m) shall be $27\frac{1}{2}$ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, * * *."

Section 22(a), supra, defines "gross income," in part, as follows:

"'Gross income' includes gains, profits, and income derived from * * * the transaction of any business carried on for gain or profit, * * *."

Treasury Regulations 94 promulgated under the Revenue Act of 1936, Art. 22 (a)-5, in part, reads:

"Gross income from business.—

"In the case of a * * * mining business 'gross income' means the total sales, less the cost of goods sold, * * * In determining the gross income subtractions should not be made for depreciation, depletion, selling expenses, or losses, or for items not ordinarily used in computing the cost of goods sold."

---

Elec. Railway Co. v. Milwaukee, 252 U.S. 100, 106, 40 S.Ct. 306, 64 L.Ed. 476, 10 A.L.R. 892; Worcester County Trust Co. v. Riley, 302 U.S. 292, 299, 58 S.Ct. 185, 82 L.Ed. 268; Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254; Dunbar v. City of New York, 251 U.S. 516, 519, 40 S.Ct. 250, 64 L.Ed. 384.

[5] See Jackson v. Harris, 10 Cir., 43 F. 2d 513, 516, and authorities there cited.

[6] See Gelpcke v. City of Dubuque, 1 Wall. 175, 17 L.Ed. 520; Butz v. City of Muscatine, 8 Wall. 575, 19 L.Ed. 490; Douglass v. County of Pike, 101 U.S. 677, 25 L.Ed. 968; Anderson v. Santa Anna, 116 U.S. 356, 6 S.Ct. 413, 29 L.Ed. 633; Rowan v. Runnels, 5 How. 134, 139, 46 U. S. 134, 139, 12 L.Ed. 85; Los Angeles v. Los Angeles City Water Co., 177 U.S. 558, 20 S.Ct. 736, 44 L.Ed. 886.

[7] Tidal Oil Co. v. Flanagan, 263 U.S. 444, 451, 452, 44 S.Ct. 197, 68 L.Ed. 382.

Art. 23(m)-1(g) thereof, in part, reads: "Depletion of * * * oil and gas wells * * *

"In all cases there shall be excluded in determining the 'gross income from the property' an amount equal to any rents or royalties which were paid or incurred by the taxpayer in respect of the property and are not otherwise excluded from the 'gross income from the property.' If royalties in the form of bonus payments or advanced royalties (see article 23(m)-10) have been paid in respect of the property in the taxable year or in prior years, the amount excluded from 'gross income from the property' for the taxable year on account of such payments shall be an amount equal to that part of such payments which is allocable to the products sold during the taxable year."

Substantially identical provisions are embodied in Articles 22(a)-5 and 23(m)-1 of Treasury Regulations 101 promulgated under the Revenue Act of 1938.

█ It is well settled that cash bonus payments paid as consideration for a royalty lease are regarded as advance royalties and are gross income to the lessor and not a recovery of capital.[8] The lessor may take a depletion allowance on advance royalties for the year in which they are received.[9]

█ In computing percentage depletion under a royalty lease, there must be an apportionment of a single depletion allowance. Out of the gross income from production for the taxable year there is apportioned to the lessor 27½ per cent of the current royalties. The remainder of the gross income from production, less advance royalties allocable to the taxable year, is apportioned to the lessee as a percentage depletion base for that year. Each receives a depletion allowance of 27½ per

cent of that part of gross income from production apportioned to him, but not to exceed 50 per cent of his net income from the property.[10] The royalties paid to the lessor are excluded from the gross income from production on which the lessee's depletion allowance is based because otherwise a double depletion allowance would result.

█ But it does not follow that a lessee may deduct from his gross income for a taxable year, for income tax purposes, that portion of advance royalties allocable to that particular year. To understand and differentiate depletion from the economic or geological viewpoint and from the standpoint of the income tax, it is essential to keep in mind that depletion is a creature of statute and a matter of legislative grace or discretion.[11] There is much force to the argument that items should be separated, when they come to the taxpayer, into their constituent parts of capital and income. The very idea of the income tax from a constitutional viewpoint implies a differentiation between that which is capital and that which is the product or yield of capital. Nevertheless, the Supreme Court has definitely set this controversial point at rest. Since the decision of the Supreme Court in Stratton's Independence v. Howbert, 231 U.S. 399, 418, 34 S. Ct. 136, 58 L.Ed. 285, it has been settled that income derived from the sale of products from a mine or oil well is gross income from the operation of a business and not a recovery of capital.[12] In Burnet v. Harmel, 287 U.S. 103, 107, 53 S.Ct. 74, 75, 77 L.Ed. 199, the court said:

"By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas, if found. Such operations with respect to a mine have been

[8] Herring v. Commissioner of Internal Revenue, 293 U.S. 322, 324, 55 S.Ct. 179, 79 L.Ed. 389; Anderson v. Helvering, 310 U.S. 404, 409, 60 S.Ct. 952, 84 L.Ed. 1277; Douglas v. Commissioner of Internal Revenue, 322 U.S. 275, 280, 64 S.Ct. 988; Palmer v. Bender, 287 U.S. 551, 557, 53 S.Ct. 225. 77 L.Ed. 489.

[9] Law of Federal Income Taxation, Mertens, Vol. 4, § 24.64.

[10] Helvering v. Twin Bell Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 79 L.Ed. 383.

[11] Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 304, 51 S.Ct. 418, 75 L.Ed. 1019; Darby-Lynde Co. v. Commissioner of Internal Revenue, 10 Cir., 51 F.2d

32, 33; Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309, 310; Anderson v. Helvering, 310 U.S. 404, 407, 408, 60 S. Ct. 952, 84 L.Ed. 1277; Helvering v. Mountain Producers Corporation, 303 U. S. 376, 381, 58 S.Ct. 623, 82 L.Ed. 907.

[12] See Stanton v. Baltic Mining Co., 240 U.S. 103, 114, 36 S.Ct. 278, 60 L. Ed. 546; Burnet v. Harmel, 287 U.S. 103, 107, 53 S.Ct. 74, 77 L.Ed. 199; Douglas v. Commissioner of Internal Revenue, 322 U.S. 275, 280, 64 S.Ct. 988, 88 L.Ed. 1271; Anderson v. Helvering, 310 U.S. 404, 408, 60 S.Ct. 952, 84 L.Ed. 1277; United States v. Biwabik Mining Co., 247 U.S. 116, 123, 38 S.Ct. 462, 62 L.Ed. 1017.

said to resemble a manufacturing business carried on by the use of the soil, to which the passing of title of the minerals is but an incident, rather than a sale of the land or of any interest in it or in its mineral content."

In Anderson v. Helvering, 310 U.S. 404, 407, 408, 60 S.Ct. 952, 954, 84 L.Ed. 1277, the court said:

"The production of oil and gas, like the mining of ore, is treated as an income-producing operation, not as a conversion of capital investment as upon a sale, and is said to resemble a manufacturing business carried on by the use of the soil. Burnet v. Harmel, 287 U.S. 103, 106, 107, 53 S.Ct. 74, 75, 77 L.Ed. 199; Bankers Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; United States v. Biwabik Mining Co., 247 U.S. 116, 38 S.Ct. 462, 62 L.Ed. 1017; Von Baumbach v. Sargent Land Co., 242 U.S. 503, 521, 522, 37 S.Ct. 201, 206, 61 L.Ed. 460; Stratton's Independence v. Howbert, 231 U.S. 399, 414, 34 S.Ct. 136, 139, 58 L.Ed. 285. The depletion effected by production is likened to the depreciation of machinery or the using up of raw materials in manufacturing. United States v. Ludey, 274 U.S. 295, 302, 303, 47 S.Ct. 608, 610, 611, 71 L.Ed. 1054; Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 275, 69 L.Ed. 660. Compare Von Baumbach v. Sargent Land Co., supra, 242 U.S. at pages 524, 525, 37 S.Ct. 201, 208, 209, 61 L.Ea. 460. The deduction is therefore permitted as an act of grace and is intended as compensation for the capital assets consumed in the production of income through the severance of the minerals. Helvering v. Bankline Oil Co., 303 U.S. 362, 366-367, 58 S.Ct. 616, 617, 618, 82 L. Ed. 897."

Those portions of gross income allocated to the taxable years for depletion purposes which the taxpayer here seeks to deduct were derived from its working interests under the leases, that is, they were proceeds derived from that portion of the production remaining after satisfaction of current royalties. They were income which inured to the taxpayer from the sale of its share of production. All of such proceeds were received by the taxpayer as its own, without any requirement that it pay any portion thereof to the lessors, and were subject to the taxpayer's sole disposition. They were in no sense the proceeds of oil reserved by the lessors as royalty under the leases. Therefore, it cannot be said that the taxpayer was a mere conduit through which those portions of the gross proceeds passed to the lessors.[13] Since they were derived from proceeds of oil which, under the leases, belonged wholly to the taxpayer and the lessors had no interest therein, we are of the opinion that under Regulations 94, Art. 22(a)-5, and the rationale of Stratton's Independence v. Howbert, supra, and cases cited in Note 12, they must be regarded as gross income to the taxpayer.

While advance royalties are regarded as income to the lessor, with respect to the lessee, they represent cost and are a capital expenditure.[14] There is no incongruity in the view that a bonus and royalty are "consideration for the lease, and are income of the lessor." Burnet v. Harmel, supra, 287 U.S. 103 at page 112, 53 S.Ct. at page 77, 77 L.Ed. 199. Not infrequently, payments made for an article constitute a capital investment by the payor, but income to the recipient. Where a manufacturer processes raw materials and constructs therefrom a finished product, and sells such product, the whole of the purchase price may be a capital investment by the purchaser, but, to the extent it exceeds the cost of goods sold, it is gross income to the manufacturer.[15] It is significant that in the accounting practices of 30 of the 32 principal companies engaged in the production of oil, an advance royalty is treated from the payor's standpoint as a capital investment.[16]

The lessee of an oil and gas lease may elect between cost and percentage depletion in a particular tax year.[17] Here, the taxpayer elected to take percentage depletion for each of the taxable years involved. Had it elected to take cost depletion, the bonuses or advance royalties would have been included in the base for cost depletion. But the taxpayer may not have the benefit of both cost and percentage depletion. In effect, the taxpayer here is seeking to recover its original invest-

---

13 Cf. Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324.

14 Batón Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 51 F.2d 469, 470; Law of Federal Income Taxation, Mertens, Vol. 2, § 12.31; Id., Vol. 4, § 25.22.

15 See United States v. Ludey, 274 U.S. 295, 302, 47 S.Ct. 608, 71 L.Ed. 1054; Art. 22(a)-5, Tr.Reg. 101.

16 Depletion in the Oil Industry, Paul Forasté (1943), p. 9.

17 Law of Federal Income Taxation, Mertens, Vol. 4, § 24.35.

ment in the oil and gas leases by amortizing its cost and deducting a portion thereof from gross income annually in addition to a percentage depletion allowance. There is no statutory basis for such a deduction where percentage depletion has been taken.[18] In such a case, the investment can only be recovered through the percentage depletion allowance. To hold otherwise would result in a double depletion allowance.

The decision of the Tax Court is affirmed.

———◆———

---

[18] Quintana Petroleum Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 588, 591.