## WESTATES PETROLEUM COMPANY (AND WHOLLY-OWNED SUBSIDIARY WESTATES PETROLEUM CORPORATION), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38928. Promulgated October 9, 1953.

*George D. Hardisty, Esq.*, and *Herbert F. Baker, C. P. A.*, for the petitioners.

---

36

*Aaron S. Resnick, Esq.*, for the respondent.

38

38

OPINION.

VAN FOSSAN, *Judge:* The only question presented for determination is the treatment to be accorded, for tax purposes, the receipt by the petitioners of the sum of $21,709.76. This amount was received by the taxpayers pursuant to the terms of the option and operating agreement with Stanolind entered into in November 1947. The facts are fully set out in our findings and need not be repeated *in extenso.*

The petitioners contend that the amount received represented the proceeds of the sale of the right to enter upon the land and the right to remove oil and gas in place and that it constituted merely a return of capital. It is the respondent's view that the amount in question was received as ordinary income subject to a depletion allowance. The transaction took the form of an option to explore and acquire oil and gas rights below 4,500 feet on the leased lands. The sum received was in consideration of the option to acquire the 75 per cent interest in the rights below 4,500 feet and was payable either at the commencement of the exploration, if prior to approval of titles, or upon acceptance of the lease acreage after approval of titles. The amount in question was, therefore, paid by Stanolind to acquire an option on the oil and gas rights below 4,500 feet with provision being made for a continuing interest in Westates in the deeper rights in the amount of 25 per cent, as well as all of the shallow rights. Provision was made in the agreement for Westates to own an undivided 25 per cent in a paying well and to pay its proportionate share of the operating costs. If the first well should prove dry, a second drilling could be undertaken.

Westates was to bear 25 per cent of the cost of this well and to retain a 5 per cent net profit interest in addition to a "carried working interest" of 20 per cent.

It is our opinion that the sum of $21,709.76 was received as payment for the option to acquire, by assignment, the lease on the oil and gas rights below 4,500 feet and that it constituted a bonus payment additional to the retained 25 per cent interest in the oil and gas proceeds. Bonus or advanced royalty payments for the assignment of an oil and gas lease do not represent the proceeds from the sale of a capital asset but constitute ordinary income. *Burnet* v. *Harmel*, 287 U. S. 103. It was there said:

* * * Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas. By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas, if found. * * *

* * * * * * *

Bonus and royalties are both consideration for the lease, and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by the actual production. * * *

The fact that the transaction took a form other than that of a sublease or that it was designated a sale of a portion of the lease rights is not determinative that a capital transaction occurred. *Palmer* v. *Bender*, 287 U. S. 551. In *Kirby Petroleum Co.* v. *Commissioner*, 326 U. S. 599, it was held that an owner who leased his lands for the production of oil, gas, and other minerals and received in consideration a cash bonus, royalty, and additional payments from the net profits of the operations of the lessee was entitled to a percentage depletion deduction from gross income in respect of the net profits as well as the bonus and royalties. A cash bonus payment paid as consideration for such a lease is regarded as advance royalties and as gross income to the lessor. *Sunray Oil Co.* v. *Commissioner*, 147 F. 2d 962. The amount received by the taxpayers here must similarly be classified as a bonus paid to obtain the option to explore and drill for oil or gas on the leased property and must be included in gross income by Westates. Westates did not sell or otherwise dispose of its interest in the land it had leased but retained a portion of its interest in the oil and gas in place while assigning the right for a limited time to explore and drill for the oil and gas.

The inclusion in gross income and allowance for depletion on the payment received is not dependent upon actual production of oil or gas during the taxable years. *Herring* v. *Commissioner*, 293 U. S. 322; *Burton-Sutton Oil Co.* v. *Commissioner*, 328 U. S. 25. The petitioners rely upon *Berry Oil Co.* v. *United States*, 25 F. Supp. 96,

wherein an amount received by the taxpayer for the assignment of a half interest in oil and gas below 2,000 feet was held to represent the purchase price of an agreement and not ordinary income. The controlling factor was stated as the fact that there was no depletion of the oil and gas by production. This rule, however, has not been followed in the later cases, *Herring* v. *Commissioner*, *supra*, *J. T. Sneed, Jr.*, 33 B. T. A. 478, and such payments have been included in income and depletion allowed thereon subject to the proposition that if the leases or mineral rights for which the advance payment was made are abandoned or terminated prior to the removal of the oil or gas, the lessor must report as taxable income the amount previously allowed to him as depletion as to which no production has occurred. *Douglas* v. *Commissioner*, 322 U. S. 275; *Grace M. Barnett*, 39 B. T. A. 864. We conclude that the petitioners erred in not including the amount in question in ordinary income.

*Decision will be entered for the respondent.*