COLER et al. v. BOARD OF COM'RS OF STANLY COUNTY et al.

(Circuit Court, W. D. North Carolina. August 12, 1898.)

No. 42.

**1.** EQUITY—JURISDICTION OF FEDERAL COURT—ADEQUATE REMEDY AT LAW.

A federal court is not deprived of jurisdiction to grant equitable relief on the ground of the existence of an adequate remedy at law because there may be a remedy under a state statute. To bar a complainant of his right to relief in equity, he must have an equally efficient remedy at law enforceable in the same court.

**2.** SAME—TRUST FUND—TAX COLLECTED FOR SPECIAL PURPOSE.

Where a tax expressly authorized by a valid statute for the payment of interest on county bonds has been levied and collected, the fund so created is dedicated to a special purpose, or impressed with a trust, the enforcement of which is a proper subject of equity jurisdiction; and, upon a refusal of the county authorities to apply the fund to the purpose for which it was raised, the holders of the bonds are entitled to an injunction to prevent its appropriation to other purposes pending a determination of their rights therein.

**3.** RES JUDICATA—VALIDITY OF COUNTY BONDS—JUDGMENT IN SUIT BETWEEN COUNTY OFFICERS.

A judgment holding that bonds issued by a county are void, rendered in a suit brought by the county commissioners against the county treasurer to restrain him from paying the interest on such bonds, is not an adjudication binding upon the bondholders, who were not parties nor represented in the suit.

**4.** FEDERAL COURTS—FOLLOWING STATE DECISIONS—VALIDITY OF MUNICIPAL BONDS.

The rule that a federal court is bound by the decision of the court of last resort of a state holding a state statute void because not constitutionally enacted does not apply as to a statute authorizing the issuance of municipal bonds, in an action by a holder of such bonds who purchased before the decision was made, nor when at the date of such purchase the decisions of the state court sustained the validity of the bonds.

**5.** SAME—EFFECT OF PRIOR DECISIONS OF STATE COURT.

Where the decisions of the court of last resort of a state, up to the time when bonds of a county were issued and sold in the market, all tended to establish the doctrine that a state statute which had received the signature of the presiding officers of the two houses of the legislature was conclusively presumed to have been legally enacted, and could not be collaterally impeached in that regard, a federal court, in a suit involving the rights of a purchaser of such bonds, is not bound by a state decision, subsequently rendered, holding the statute under which the bonds were issued void as not having been constitutionally enacted, which decision was based upon the evidence of the legislative journals, received to impeach the statute, though it was duly attested by the signatures of the presiding officers.

**6.** STATUTE—VALIDITY OF ENACTMENT—CONSTITUTIONAL PROVISIONS.

Under the requirement of Const. N. C. art. 2, § 14, that no law shall be passed allowing a municipality to impose any tax upon the people, unless the yeas and nays on the second and third readings of the bill for that purpose shall be recorded on the journal of each house, to sustain the power of a county to issue bonds and levy a tax for their payment it must be affirmatively shown that the legislative journals contain the record of the yeas and nays on the passage of the bill authorizing such action; and the journals are, by virtue of the constitutional provision itself, the evidence of such fact.

**7.** RAILROADS—SUBSCRIPTION OF STOCK BY COUNTY—CONSTRUCTION OF STATUTE.

Code N. C. § 1996, provides that "the boards of commissioners of the several counties shall have power to subscribe stock to any railroad com-

89 F.—17

pany or companies when necessary to aid in the completion of any railroad in which the citizens of the county may have an interest." The following sections prescribe the mode of making the subscription, taking a vote, and levying the tax. *Held*, that the words, "when necessary to the completion of any railroad," do not limit the power of a county to make a subscription to' such roads as were partially completed at the time the Code was enacted, nor does the section require the citizens to have a direct pecuniary interest in the road, but a public interest, such as is created by the building of a railroad into the county, and the fixing of one of the termini therein, is sufficient to fulfill the condition and authorize a subscription to its stock by the county, and the issuance of bonds and levying of taxes to carry out the same.

Opinion on Motion for Temporary Injunction.

Charles Price, for complainants.

Benj. F. Long, D. Scheck, Jr., A. C. Avery, and J. E. Shepherd, for respondents.

SIMONTON, Circuit Judge.    This is an application for an injunction to be directed to the board of commissioners of Stanly county, and I. W. Snuggs, treasurer of the county.    The case arises in this way:    The Yadkin Railroad Company is a corporation created under the law of the state of North Carolina, authorized to construct a railroad from Salisbury south to Norwood, a point in the county of Stanly. The corporation was created by an act of assembly in 1870, and the charter was amended by an act passed in 1887.    Under the provisions of the amended act, the county of Stanly was expressly authorized to subscribe to the capital stock of this railroad.    The question having been duly submitted to a popular vote of the people of this county, by an overwhelming majority a subscription was authorized of $100,-000, to be made in coupon bonds, some in the denomination of $1,000, and some in that of $500, bearing interest at the rate of 6 per cent. per annum, payable on the 1st of July in each year.    The county commissioners, in accordance with this authorized subscription, prepared and issued $100,000, face value, of bonds, delivered them to the railroad company, and received certificates of stock to the amount thereof, which certificates are still held for the county.    The bonds were placed on the market, and were all sold to bona fide purchasers for value,—among others, to the trustees of the University of North Carolina.    Each of these bonds on its face declares that it is one of a series issued by authority of an act of the general assembly of North Carolina ratified the 3d of March, 1887, and of sections 1996–1998 of the Code of North Carolina, and authorized by a majority vote of the qualified voters of Stanly county at an election regularly held for that purpose the 15th of August, 1889, duly ordered by the board of county commissioners,—issued to pay the subscription made by Stanly county to the capital stock of the Yadkin Railroad Company.    Under the terms of the act a tax was to be levied each year to pay the coupons on these bonds. , In accordance therewith such tax was duly levied each year for four successive years, and the coupons paid from the proceeds thereof.    The tax for the fifth year was duly levied and collected, and is in the treasury of the county.    The county commissioners, having become convinced that the bonds were illegally issued, instituted proceedings in a state court of North Carolina against the

treasurer of the county, praying that he be enjoined from paying any more coupons on these bonds. This injunction was thereupon issued by said court on the ground of the invalidity of the bonds to which said coupons belonged, and its action in the premises was confirmed by the supreme court of North Carolina. 28 S. E. 539. The complainants, citizens and residents of the state of New York, are the owners and holders of 48 of these Stanly county bonds, of the denomination of $1,000 each, and of 33 of the same bonds of the denomination of $500 each. All of these were purchased in open market for value before maturity. Upon these there are due and unpaid coupons for one year on said bonds,—the year for which the tax was levied and collected. The prayer of the bill is that the county commissioners and the treasurer of the county be enjoined and restrained from using this money, proceeds of the tax so levied and collected, for any other purpose than the payment of the coupons on said $100,000 of bonds subscribed as aforesaid, including therein coupons held by complainants, and that they be instructed and directed to pay from said proceeds of said tax the said coupons on said bonds.

Before any examination into the merits of this case can be made, two preliminary questions must be met and decided. The defendants deny the jurisdiction of this court sitting as a court of equity, because, as they allege, the complainants have a plain, adequate, and complete remedy at law. They also claim that this court will not go into an investigation of the validity of these bonds and the coupons thereof, because this is a matter already concluded, with respect to the identical bonds, by the supreme court of North Carolina, and is not only res judicata, but is the construction of a court of last resort of a state of its own constitution and statutes.

Have the complainants a plain, adequate, and complete remedy at law? The question is not, is there a remedy at law? "Equity jurisdiction may be invoked, although there is a remedy at law, unless the remedy at law, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy in equity." Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594. This objection being in the nature of a demurrer, these facts must be accepted as true. A special tax has been levied under the act of the general assembly to pay these coupons. This tax has been collected in money, and is now in the hands of the county treasurer, received by him for this purpose, as treasurer of the county, and so under the direction of the county commissioners. Code N. C. §§ 766, 777. It may well be questioned if an action for money had and received will lie against the treasurer under these circumstances, for he received and holds the money subject to the control of the county commissioners. If such action be brought, and it be discovered that all county funds in the hands of the treasurer had been expended by him under warrants from the county commissioners,—the mode authorized by law,—it is by no means clear that a personal judgment, or a judgment binding his bond, could be obtained against him. If this be so, in order to obtain adequate relief an injunction should be issued against any use of the proceeds of this tax,—either against the treasurer, protecting him in disobedience of the warrant of the county commissioners directing other use of

this money, or against the commissioners themselves from attempting so to do. Such relief cannot be had at law. Such a remedy might perhaps be found in the practice under the Code. But this will not affect the ancient and well-established jurisdiction of the court of equity. "The adequacy or inadequacy of a remedy at law for the protection of one entitled on any ground to invoke the powers of a federal court is not to be conclusively determined by the statutes of the particular state in which suit may be brought." Smyth v. Ames, 169 U. S. 516, 517, 18 Sup. Ct. 422. The test is, has he a remedy at law in this court? If he has not, then a court of equity has jurisdiction. Besides this, the tax in question was levied upon the county pursuant to the provisions of the act of assembly. Having been once levied and collected, no other tax for the same purpose could be again levied and collected. If, therefore, the county commissioners, in the exercise of rights claimed by them in their view of the invalidity of these bonds, had appropriated and used for other purposes the proceeds of the tax levied and collected for the coupons of the bonds, the holders of these coupons, if perchance they establish the validity of their bonds, will be without remedy against the county. In this view of the case, the taxpayers of the county, having once furnished the money by paying the special levy, cannot be called upon to furnish it again. Therefore an injunction would be appropriate to prevent the use of this fund. Necessarily all this proceeds upon the idea that the fund created for the payment of these coupons is impressed with a trust. Assume now, for the sake of the argument (and at this stage of the case, considering this objection, which is in effect a demurrer, we must assume it), that the act under which the bonds were issued is valid. The act authorized the subscription, to be made in bonds with coupons; also, the levy of the tax to pay the coupons. All these—the authority to subscribe, the mode of subscription, the tax to meet the terms of the subscription, the collection of the tax, and holding its proceeds—are the several steps by which the legislature secures the performance of the powers given by it to the county. If the collection and application of the proceeds of this tax to the interest of the bonds so authorized be not secured, the intent of the legislature will not be completed. This being the case, these funds are dedicated to a special object, and cannot be applied to any other. In other words, they are impressed with a trust, and that trust can well be enforced in a court of equity. Willis v. Board, 30 C. C. A. 445, 86 Fed. 872. This being so, there is not a plain, adequate, and complete remedy at law, such as will prevent the exercise of the established jurisdiction in equity over a trust. See Lamon v. McKee, 159 U. S. 317, 16 Sup. Ct. 11.

The supreme court of North Carolina, in Commissioners v. Snuggs, 121 N. C. 394, 28 S. E. 539, held that the bonds issued by Stanly county in aid of this railroad were void. The ground of the decision was that it did not appear affirmatively upon the journals of the two houses that the yeas and nays on the second and third readings of the bill had been entered upon the journal, as required by the constitution, and, further, that it is competent to introduce in evidence the journal of either house of the legislature in order to show that an act

duly enrolled and ratified was not passed in compliance with the constitutional requirement. The parties to the suit in which this decision was rendered were the county commissioners, on the one hand, and their treasurer, on the other. No bondholder was a party, nor were the interests of the bondholders represented. It is clear, therefore, that the case cannot operate as res judicata against the bondholders. Indeed, when we examine this case, it is difficult to avoid the conclusion that it was practically ex parte. The treasurer, under the Code of North Carolina, above quoted, is under the control of the county commissioners. He cannot expend any money in the county treasury, except under their warrant, or with their authority. To this he is bound by his bond. When, therefore, they proceed against him, seeking an injunction from the court, the proceeding in fact is by the principal seeking to prevent the agent from doing an act which he cannot do without their permission. The parties plaintiff and defendant to this suit were practically one.

But is not this case the determination of the court of last resort in North Carolina upon the constitution and laws of that state, which would be conclusive in this court? This brings up the merits of the case at bar. The general rule undoubtedly is as stated in Leeper v. Texas, 139 U. S. 467, 11 Sup. Ct. 579:

"It must be regarded as settled that whether statutes of a legislature of a state have been duly enacted in accordance with the requirements of the constitution of such state is not a federal question, and the decisions of state courts as to what are the laws of the state are binding upon the courts of the United States."

But this rule has its modifications, when applied to the validity of municipal bonds. This is stated thus:

"As against a party who became the owner of municipal bonds before the decision of the state court invalidating them was rendered, we do not consider ourselves bound by such decision, unless we regard it as intrinsically sound." Enfield v. Jordan, 119 U. S. 680, 7 Sup. Ct. 358; Bolles v. Brimfield, 120 U. S. 759, 7 Sup. Ct. 733, quoted and affirmed in Barnum v. Okolona, 148 U. S. 396, 13 Sup. Ct. 638.

And the same doctrine is announced and followed in Folsom v. Abbeville Co., 159 U. S. 611, 16 Sup. Ct. 174. See, also, Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10.

There is also another modification of the rule first stated: That when, at the date of the issue of municipal bonds, the decisions of the court of last resort sustained their validity, bona fide purchasers for value are not affected by subsequent decisions declaring them invalid. Anderson v. Santa Anna Tp., 116 U. S. 356, 6 Sup. Ct. 413.

What, then, was the law of North Carolina, as declared by its court of last resort, at the date of the issue of these bonds? The bonds were issued in 1890, and then sold on the market. The decision in Commissioners v. Snuggs was in 1897. The precise question is this: The constitution of North Carolina provides that no law shall be passed to raise money on the credit of the state, or to pledge the faith of the state, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the state, or to allow counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the general assembly,

and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal. Const. N. C. art. 2, § 14. Is it incumbent on the bondholder to prove that the statute was passed in compliance with the constitution, or is it competent for the county to show by the journals that no entry of the yeas and nays on the second and third readings was made on such journal? Or are the enrollment and ratification of the act, and its signature by the presiding officers of the two houses, conclusive proof, as of record, that all the requirements of the constitution were complied with,—so conclusive as to preclude further inquiry? It is admitted that in the case at bar there was no such entry on the journal. A question somewhat similar to this came up in Brodnax v. Groom, 64 N. C. 244. The constitution of North Carolina (article 2, § 12) provides that the general assembly shall not pass any private law, unless it shall be made to appear that 30 days' notice of application for such a law shall have been given under such direction and in such manner as shall be provided by law. In this case the objection was made to an act that the 30-days notice had not been given. Pearson, C. J., delivering the opinion of the court, says:

"We do not think it necessary to enter into the question whether this is a public local act, or a mere private act, in regard to which thirty days' notice of the application must be given; for, taking it to be a mere private act, we are of opinion that the ratification certified by the lieutenant governor and the speaker of the house of representatives, makes it a matter of record, which cannot be impeached before the courts in a collateral way. Lord Coke says, 'A record, until reversed, importeth verity.' * * * The courts must act on the maxim, 'Omnia presumuntur.'"

It will be noticed that the constitution, in this regard, does not prescribe any fixed mode in which the notice must be shown.

In Scarborough v. Robinson, 81 N. C. 304, the question was discussed. In that case it appeared that an act of the legislature had gone through every stage required by the constitution; had been voted upon on its second and third readings, by the yeas and nays, and these had been entered upon the journal. It had been duly enrolled for ratification, and the journals stated that it had been duly ratified. But, upon examination of it in the office of the secretary of state, it showed an absence of the signatures of the presiding officers of the two houses. An effort was made to declare it the law, notwithstanding this omission. Smith, C. J., delivering the opinion of the court, clearly expresses his opinion that the certificate and signatures of the presiding officers make a record which cannot be assailed. He quotes with approval Pacific R. Co. v. Governor, 23 Mo. 353, which lays down this doctrine, and denies to the court the power to declare invalid an act which in its terms is not contrary to the constitution,—on its face is regular,—where resort must be had to something behind the law itself in order to ascertain whether the legislature, in making the law, was governed by the rules prescribed for its action by the constitution. He also quotes with approval State v. Young, 32 N. J. Law, 29, followed in Nevada v. Swift, 10 Nev. 176, in which the doctrine is broadly stated that a bill attested

by the presiding officers is conclusive proof of the enactment and contents of a statute, and cannot be contradicted by the legislative journals, or in any other way. But this expression of opinion by this learned chief justice is declared by himself to be obiter dictum. He expressly limits the decision of the court to the absolute necessity of the signatures of the presiding officers to the enrolled act, because it was one of the essential requirements of the constitution.

Such were the decisions of the supreme court of North Carolina before and at the date of the issue of these bonds. Subsequent decisions of this same court throw some light upon those quoted. In Carr v. Coke, 116 N. C. 223, 22 S. E. 16, among the published acts appeared one of which the journals did not show that it had the three readings in each house, as required by the constitution. Const. art. 2, § 23. It had, however, been duly ratified. The court held, with a strong dissent of two of its members, that when it appears that a bill has been duly signed by the presiding officers of the two houses of the general assembly, declaring it to have been read three times in each house, the courts cannot go behind such ratification to inquire whether it was fraudulently or erroneously enrolled before it had been passed after the requisite readings by each house, although the journals do not show that it was so passed. Faircloth, C. J., wrote the opinion of the court, and rests on the doctrine announced in Brodnax v. Groom, supra. Here it will also be noticed that the constitution does not prescribe that the fact of three readings must be entered upon the journals. The next is the case of Commissioners v. Snuggs, above quoted, declaring these bonds invalid after admitting the evidence of the journals. The only decision upon the validity of municipal bonds is this last. So, when these bonds were issued, the purchaser, upon making the inquiry as he was bound to do, did not have direct authority for believing the act constitutional. He was governed by reasoning from analogy in similar cases. This court therefore has the right to form its own judgment upon the matter.

The general principle laid down by Pearson, C. J., in Brodnax v. Groom. and approved by his learned successors, Chief Justices Smith and Faircloth, has met the approval of, and has been ably sustained in, many states of this Union. In others it has been disputed, and the contrary conclusion reached. The conflicting cases are quoted in Field v. Clark, 143 U. S. 661, 12 Sup. Ct. 495, and many of them commented on in an able opinion in State v. Jones (Wash.) 34 Pac. 201. The question is one of power. Had the county of Stanly, under the act of 1870-71, power to make this subscription in bonds, and to levy the tax consequent thereon? Or perhaps the question can be put in this way: Was the act passed by the general assembly in the lawful exercise of the power given to it by the constitution of the state? It goes without saying that the legislatures of the several states of the Union have full legislative power, limited only by express provisions of the constitution. And one of the legislative powers is the levying of a tax for such purposes as the legislature deems public in their character, among which all the states recognize subscriptions in aid of railroads. The people of North Carolina, in their constitution, limited this power of taxation in the legislature, and declared that, when

it is exercised in incurring any debt and levying a tax therefor, certain indispensable prerequisites must exist. Other acts must be read three times in each house. Const. art. 2, § 23. An act for this purpose cannot become a law, unless it has been read three several times in each house, and has passed three several readings, and it has been so read on three different days, and agreed to by each house, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal. Here the constitution distinctly and expressly states the mode, and the only mode, in which this power can be exercised. The entry of the yeas and nays on the last two readings must appear on the journal. Unless each and every of the requirements of the constitution are fulfilled, it is no law. The constitution itself makes the journal evidence, because the entry on the journal must be made to appear. It is a familiar rule of law that, where a limited authority is conferred, it must be shown that the exercise of the authority was within the limitations. Especially is this the case when the constitution expressly, in a separate section, declares when, and only when, and how, and only how, this power can be exercised. The party claiming under the exercise of the power must establish it beyond question. There is some force in the peculiar language of the constitution. It does not say that in passing such an act there must be three readings, etc. It says no such law can be passed, unless certain prescribed requisites have actually been performed, and unless the yeas and nays shall have been entered on the journal; thus making these prerequisites a condition precedent. It is well expressed in the opinion of the court in Commissioners v. Snuggs:

"The certificate of the presiding officers will be taken as conclusive of the several readings in ordinary legislation, even if it could be made to appear that the journals were silent in reference thereto, because in ordinary legislation the directions of the constitution are not a condition precedent to the validity of the act. But in that class of legislation, the purpose of which is to legislate under section 14 of article 2 of the constitution, a literal compliance with the language of the section is a condition precedent, and one which must be performed in its entirety before the bill can ever become a law."

The act in question passed the legislature, no doubt, and the certificate of the presiding officers that it received three readings in each house, no doubt, is conclusive, and in its general result it may be a valid act. But, when it is set up as authority for levying this tax to meet this subscription, it must affirmatively appear that the condition precedent was complied with, and that the yeas and nays were recorded in the journal. This is not a question of repudiation of a debt,—not an effort to escape from an obligation because certain technical matters of detail in the exercise of a power were neglected, or were not made to appear. The question is, does this obligation exist at all? Did the legislature, in the exercise of a restricted authority, keep within the limits of the restriction? The bonds, however, upon their face, declare that they were issued under the authority of sections 1996–2000 of the Code of North Carolina; and in construing these sections, for reasons already given, this court can exercise its own judgment. "All the sections of the Code were enacted by the

general assembly, having passed three several readings on three different days in either house; the yeas and nays on the second and third readings having been entered on the journals of both houses, respectively." Commissioners v. Snuggs, 121 N. C. 401, 28 S. E. 539. There can be no question that these sections were passed in strict compliance with the terms of the constitution. Section 1996 is as follows:

"The boards of commissioners of the several counties shall have power to subscribe stock to any railroad company or companies when necessary to aid in the completion of any railroad in which the citizens of the county may have an interest."

The other sections prescribe the mode in which such subscription shall be made, the vote of the county taken thereon, and the tax levied therefor. In this case there is no question as to the regularity of all the details of subscription, vote, and tax. The sole question is as to the construction of section 1996. This section gives authority to the county commissioners to subscribe to the stock in any railroad company on two conditions: First, when necessary to aid in its completion; and, second, when the citizens of the county have an interest in it. This road runs into Stanly county. One of its termini is in that county. The other terminus connects it with the trunk line of the North Carolina Railroad at Salisbury, and gives communication with all parts of the country. To aid in building a railroad is a public purpose, and for the general welfare of the ordinary municipal corporations, such as counties, cities, and towns, through which the road is to pass, and so is a corporate purpose. Livingston Co. v. Darlington, 101 U. S. 407; Bolles v. Brimfield, 120 U. S. 759, 7 Sup. Ct. 736; Brown v. Commissioners, 100 N. C. 92, 5 S. E. 178. The public policy of all the states of the Union—notably, of North Carolina—recognize that railroads are of great public concern and a great public benefit. None of these states has shown this in a more marked degree than the state of North Carolina, which has expended vast sums in opening up the magnificent system of these public highways, developing every section of the state. It is evident, therefore, that in this Yadkin Railroad the citizens of the county of Stanly had an interest of a valuable and important character. What is the meaning of the words, "when necessary to aid in the completion of any railroad"? At the date of the passage of this section the laying of the track of this road had not been begun. It will be noticed that there is no time limit in this section. The words are, "to any railroad company." There is no such qualification as that made in section 4 of article 6 of the constitution, relating to a similar subject:

"And the general assembly shall have no power to give or lend the credit of the state in aid of any person, association or corporation except to aid in the completion of such railroads as may be unfinished at the time of the adoption of this constitution, or in which the state has a direct pecuniary interest unless the subject be submitted to a direct vote of the people of the state and be approved by a majority of those who shall vote thereon."

This constitution was adopted in the same year in which the act now incorporated as section 1996 of the Code was passed. The use of different language is marked and significant. The one limits the

power of the legislature to the completion of a railroad unfinished at the adoption of the constitution. The other omits such limitation, and says "any railroad." Without question, the act means any railroad whatsoever, and at any time thereafter in which the people of the county have an interest. Again, the constitution limits the power of the legislature to railroads in which the state has a direct pecuniary interest; that is to say, to which the state has granted aid before. The act, with the constitution before it, omits these words, "direct and pecuniary"; evidently intending a valuable interest, direct or incidental. What, then, is the meaning of the words "in the completion of"? This word must be used in its ordinary, colloquial sense. In its narrowest signification, the meaning of this word is to carry out something already begun; to fill out something already outlined. In this sense the act will mean, come to the assistance of a railroad begun or contemplated, and aid in accomplishing its end,—completing it to its terminus. The clear purpose of the section was to prevent a county from undertaking of itself to construct a railroad, or to subsidize one already completed, and to limit it to aid others who have undertaken the enterprise, and to aid them in its completion. In the term the "completion of a railroad" is involved the selection of the termini, the survey and location of the route, the securing of the right of way, the construction of the roadbed, and the laying and ironing the track. Any aid given in any of these stages is aid in the completion of a railway. In this view of the case, the county commissioners were authorized by these sections of the Code to make the subscription, and, their action having been sustained by the popular vote, to issue the bonds and to levy the tax.

It is ordered that the injunction issue as prayed for in the bill. It is further ordered that Kerr Craige, Esq., be appointed receiver in this behalf, and that the defendants place in his hands and under his control the moneys in the treasury of Stanly county, proceeds of the tax levied for the purpose of paying the coupons on the bonds issued in subscription to the capital stock of the Yadkin Railroad, and that he hold the same subject to the further order of this court. It is also ordered that the said receiver enter into bond, with surety to be approved by a judge of this court, in the penal sum of $10,000, with the condition for the faithful performance of his trust as such receiver.