# THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
## SOUTH PARK COMMISSIONERS,
*v.*
## THE COMMON COUNCIL OF THE CITY OF CHICAGO.

1.  MUNICIPAL CORPORATIONS—*of the power to compel them to incur debts against their will.*  The legislature has no power to compel a city to incur a debt against its will; and although the city, by its charter, may have power to establish and maintain a park, and the authorities of the city have power to issue bonds for that purpose, yet the legislature can not compel them to do so.  Nor does the fact that the city authorities have voluntarily incurred a debt or appropriated money for one park, give to the legislature power to compel them to incur a debt or appropriate money for another park.

2.  SAME—*of the act of March 10, 1869, in relation to equalizing the amount of money to be expended for the different parks in Chicago.*  So that act, by which it was sought to compel the city of Chicago, without the consent of the people thereof, or of its corporate authorities, to issue the bonds of the city, for the purpose of equalizing the amount which the city had voluntarily expended, and was about to expend, for Lincoln Park, with that which the act required the city to appropriate for certain other parks, is invalid and cannot be enforced.

Application for mandamus.

The opinion states the case.

Messrs. BECKWITH, AYER & KALES, for the relators.

A municipal corporation is a mere political agency, created and endowed with certain public functions for more conveniently carrying out the objects of government. It exists only for public purposes, and can hold and own property only for such purposes; and these are liable at any time to be so modified by legislation as to render the property no longer available. The State retains complete authority to mould and change the corporate organization, to enlarge or diminish its powers, and superintend and control its property and effects, and to abolish it at pleasure, as the public exigencies may require.

*County of Richland* v. *County of Lawrence*, 12 Ill. 1; *Trustees of Schools* v. *Tatman*, 13 Ill. 30; *The People* v. *Springfield*, 25 Ill. 187; *Keithsburg* v. *Frick*, 34 Ill. 405; *East Hartford* v. *Hartford Bridge Co.* 10 How. 535; *State* v. *St. Louis Co.* 34 Mo. 572; *Montpelier* v. *East Montpelier*, 29 Vt. 19.

A municipal corporation can exercise no powers except such as have been delegated to it by the legislature, and whatever the legislature may *permit* it to do, with a view to the general benefit, it may compel it to do, whether its citizens are willing or not.

*Sharpless* v. *Mayor*, etc. 21 Penn. St. 166; *Kirby* v. *Shaw*, 19 Penn. St. 258; *Thomas* v. *Leland*, 24 Wen. 65; *Guilford* v. *Supervisors*, etc. 18 Barb. 615; *Same case*, 13 N. Y. 143; *People* v. *Mitchell*, 35 N. Y. 551; *People* v. *Power*, 25 Ill. 187; *Shaw* v. *Dennis*, 5 Gilm. 405; *Layton* v. *New Orleans*, 12 La. An. 515; *Cheaney* v. *Hooser*, 9 B. Monroe, 338; *Merrick* v. *Amherst*, 12 Allen, 500.

Mr. S. A. IRVIN and Mr. E. A. STORRS, for the respondents.

The South Park Commissioners, as constituted and appointed, and with the duties imposed and the powers conferred, and *as*

imposed and conferred, are not entitled to determine what amount of *city* bonds ought to be issued by the mayor and comptroller of the city of Chicago, for the purpose of purchasing and improving lands selected by the commissioners, for a public park in the *towns* of South Chicago, Hyde Park and Lake, nor are they entitled to *issue* the bonds of *the city* for such purpose.

The act of March 10, 1869, *only* contemplates the purchase of land for, and the creation of, a *city* or *municipal* park.

The act of Feb. 24, 1869, entitled "An Act to provide for the location and maintenance of a park for the towns of South Chicago, Hyde Park and Lake," does not either create or establish a park for the city of Chicago, and for which bonds of the city may be issued as contemplated in the act of March 10, 1869.

While the voters inhabiting the territory known and designated as the *town* of South Chicago, did, under the provisions of section 18, of the act of Feb. 24, 1869, elect to locate and establish the South Park, the election was not held under the provisions of the city charter, nor did they so vote as citizens of that part of the municipal territory known as the South Division of said city. That act only recognizes the political organizations, or municipalities, designated as towns or townships, under township organization. The issue and appropriation of bonds to the South Park would not be for corporate purposes, so far as the city of Chicago is concerned, and would be in violation of Sec. 5, Art. 9, of the constitution in that it permits a portion of the voters of the city, and the voters of the towns of Hyde Park and Lake, to impose a tax on the whole city.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This is an application for a mandamus, by the South Park Commissioners, to compel the Common Council of the city of Chicago, forthwith, to proceed and determine with all reasonable

diligence and good faith, what amount of city bonds ought justly and equitably be issued by the mayor and comptroller of the city for the purpose of purchasing and improving the lands selected by the relators for a public park, to equalize the amount already expended from the city treasury in or upon Lincoln Park for extension or improvement, as contemplated and required by the act of the general assembly of this State, approved March 10, 1869, entitled "An Act to equalize amount of money expended for parks in North, South and West Chicago."

That act is as follows :

Whereas, The city of Chicago contains three natural divisions, known as North, South and West Divisions, and the people of each of said divisions now or hereafter, may desire a park; and *whereas,* said city has already expended a large amount of money on Lincoln park, in the North Division of said city; and *whereas,* said city is about to expend more money for the extension of said Lincoln park, while a much less sum has been expended for parks in the South and West Divisions of said city; therefore,

Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That the Mayor and Comptroller of the city of Chicago shall issue bonds of said city, bearing interest at a rate not exceeding seven per cent., for the purpose of purchasing and improving lands for a park for each of said divisions, when the people of said divisions of said city, or either of them, shall elect to purchase lands for park purposes, in such amount as shall appear just and equitable, of which the Common Council of said city shall determine, to equalize the amount already expended, or that may hereafter be expended from the city treasury in or upon said Lincoln park for extension or improvement.

The whole merits of this application were considered and decided in the case of the People on the relation of McCagg

and others, styling themselves Commissioners of Lincoln Park, against the Mayor, Comptroller and City Clerk of the city of Chicago, *ante*, p. 17, in which we held the legislature had no power to compel the city to incur a debt against its will—that although, by its charter it could establish parks, and the common council might issue bonds for that purpose, yet the legislature could not compel them so to do.

It appeared in that case, that for a number of years prior to the passage of the act to fix the boundaries of Lincoln Park and provide for its improvement, approved February 8, 1869, the common council had deemed it expedient to issue a certain amount of bonds in aid of this park. This was freely and voluntarily done by the authority to whom the subject had been committed, and no limit to their power had been prescribed. The mere fact then, that the city authorities had appropriated money for this park, gives no power to the legislature to say, they shall also make appropriations to the South Park. Good reasons may have existed to induce those appropriations for that park, and like good reasons may exist why they should not for other parks. With the "reasonableness" of the "equalization" claimed, we have nothing to do, holding as we do in the Lincoln Park case, that the legislature cannot compel the corporate authorities of a city to issue its bonds for a park against their will. These bonds to equalize appropriations, are to be forced out of the people without their consent, and the application therefor, comes directly within the principles established in that case, and the mandamus must be refused.

These views are not affected by the decision of this court in the case of the South Park Commissioners against Salomon, the county clerk, wherein we held the act of the legislature, establishing a park for the towns of South Chicago, Hyde Park and Lake a valid law. That act has no relation to the city of Chicago, nor was the city in any form, a party to the proceeding. The debt had been voluntarily imposed by a majority of the legal voters of each of those towns, and they

and their property were alone made liable for the debt—that the towns were a *quasi* municipal corporation, and the commissioners, the people having sanctioned the law, were a corporate authority for the purposes contemplated by the act of the general assembly.

The motion to quash must be allowed and a peremptory mandamus refused.

*Mandamus refused.*