(No. 28085.—

THE PEOPLE *ex rel.* Joseph Gallenbach *et al.*, Appellees, *vs.* JOHN W. FRANKLIN *et al.*—(GEORGE KNOL *et al.*, Appellants.)

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 15, 1945.*

GEORGE F. MULLIGAN, JR., (GEORGE F. MULLIGAN, of counsel,) both of Chicago, for appellants.

ALFRED H. GREENING, State's Attorney, LONDRIGAN & LONDRIGAN, HUGH J. DOBBS, Corporation Counsel, and THOMAS W. HOOPES, all of Springfield, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This action is a complaint in *quo warranto*. The complaint was filed by the State's Attorney of Sangamon county, on the relation of Joseph Gallenbach *et al.* The complaint alleged that the defendants, George Knol, Sam

Crow, George G. Brown, Ray Alsip and C. L. Nicol, unlawfully claimed the right to exercise the powers, duties and privileges of members of the Supervisory Board of the Firemen's Annuity and Benefit System, under an act of the General Assembly entitled "An act to provide for the creation, setting apart, maintenance and administration of a firemen's annuity and benefit fund in cities, townships, villages and incorporated towns having a population of not less than ten thousand nor more than one hundred thousand inhabitants." (Ill. Rev. Stat. 1943, chap. 24, par. 944.66 *et seq.*) The complaint also alleged that the defendants, John W. Franklin, James E. Furlong, Joseph D. Patton, John W. Kapp, Jr., and Carl H. Blase, unlawfully claimed the right to exercise powers, duties and privileges, as a Board of Trustees of the Firemen's Annuity and Benefit System in the city of Springfield, under said act. It further alleged the usurpation by the defendants of such powers, duties and privileges, and called upon them to justify by what warrant they claimed the right to exercise such powers.

The defendants Knol, Crow, Brown, Alsip and Nicol filed a joint answer as members of the Supervisory Board, created by said act, and justified their right to act as such, under the provisions of the act. The remaining defendants filed a short answer alleging that they were the legally constituted trustees of the Firemen's Annuity and Benefit System for the City of Springfield, under said act. They adopted the answer of the defendants last above named, by reference. Thereupon, the plaintiffs filed a motion to strike the answers. By this motion they alleged that the act under which the defendants attempted to justify was unconstitutional for various reasons set out in the motion.

Upon a hearing, the court sustained the motion to strike the answers. The defendants elected to stand by their answers and refused to plead further. Judgment of ouster

was entered. The members of the Supervisory Board, only, have perfected this appeal. In this opinion the Supervisory Board of the Firemen's Annuity and Benefit System will be referred to as the Supervisory Board.

The act is long and complicated. It consists of sixty-seven long and involved sections. It covers more than seventy pages in the Session Laws. (Laws of 1943, vol. 1, pp. 327-400.) It is couched in language both complex and complicated. Its provisions are replete with esoteric and repetitious details. It is composed of endless sentences, some of which contain more than four hundred words. The fact, however, that the act is long and complicated, and difficult of comprehension, does not render it invalid, unless the language therein contained is such as to render the act so vague and uncertain that its meaning cannot be reasonably ascertained.

As indicated by its title, the act applies to all cities, townships, villages and incorporated towns having a population of not less than 10,000, nor more than 100,000. By section 3, it is provided that in each city to which the act applies, in which a firemen's pension fund shall exist by authority of law at the time the act becomes effective, the board of trustees of such pension fund shall be and constitute the Board of Trustees of the Annuity and Benefit Fund created by the act, until the first day of January of the first year after the date on which the act becomes effective. That section provides that thereafter, in each city, a board composed of five members shall constitute a board of trustees, authorized to carry out its provisions and charged with the duty of administering the annuity and benefit fund, for such city, under the act. It is further provided that this board shall be known as the Retirement Board of the Firemen's Annuity and Benefit Fund of such city. This board will be hereafter referred to in this opinion as the Retirement Board. It is provided that such board shall consist of the mayor or corresponding

executive officer of the city, or a person appointed by him; the treasurer of such city; and three persons elected annually by the firemen of such city, and who shall be active firemen or former firemen of such city, who shall be beneficiaries of, or entitled to, benefits from the annuity and benefit fund provided in the act, at the time such election is held.

The act then provides for the election of a Supervisory Board. This board also consists of five members. The members are elected at a convention of delegates from the cities within the act. Section 12 provides that at the regular September meeting of the Retirement Board, each year, in each city within the provisions of the act, there shall be elected from among the members of such Retirement Board one person who shall be an active fireman of the city, or the beneficiary of, or eligible to, benefits from the annuity and benefit fund, to serve as a delegate at the next annual convention of delegates from all such cities.

Section 13 provides that the annual convention of delegates shall elect the members of the Supervisory Board. In the election of members of the Supervisory Board, it is provided that at the first annual convention two persons shall be elected from the delegates to the convention from Retirement Boards of cities having a population of 42,000 or more, one for the term of one year and one for the term of two years. It further provides that there shall be elected two members of the Supervisory Board who shall be delegates to the convention from the Retirement Boards of cities having a population of 15,000 or more, but less than 42,000, for terms of one and two years, respectively, and one member who shall be a delegate from a Retirement Board of a city having a population of less than 15,000 inhabitants, for the term of one year. It further provides that thereafter there shall be elected annually one member of the Supervisory Board from the delegates to the convention from a Retirement Board of a

city having 42,000 or more inhabitants, to serve for the term of two years; one from the delegates to such convention from a Retirement Board of a city having a population of 15,000 or more, and less than 42,000 inhabitants, for the term of two years, and one to be elected from a Retirement Board of a city having a population of less than 15,000 inhabitants, to serve for the term of one year.

By section 14, it is provided, that the powers and duties of the Supervisory Board shall be:

1. To prescribe a system of books and records to be kept by the several Retirement Boards.

2. Require any Retirement Board to furnish such evidence as said Supervisory Board may deem necessary, in order that said Supervisory Board may satisfy itself that such Retirement Board is complying with all the duties imposed upon it by the act; to notify the Retirement Board of any action or failure to act on its part, whereby the intents and purposes of the act are not being fulfilled.

3. To cause an audit of the accounts of any annuity benefit fund to be made by a competent person at any time when, in its opinion, such an audit is advisable.

4. To submit a report annually to each Retirement Board and to the Director of Insurance, concerning the affairs of the benefit fund under control of such Retirement Boards.

5. To submit, annually, a summarized report to each Retirement Board comprised within the provisions of the act, and to the Director of Insurance.

6. To ascertain, as soon as possible after the 31st day of December in each year, the amounts payable and receivable by each annuity and benefit fund for each city included in the provisions of the act.

7. To pay the expenses of delegates to the conventions and of members of the Supervisory Board to meetings of such Board.

8. Procure and furnish to the Retirement Boards all books and records necessary for the proper operation of the funds.

9. To appoint such actuarial, medical, legal, clerical or other employees as shall be necessary, and pay such and all other expenses necessary for the proper administration of the Supervisory Board from the funds made available by the act for the expenses of said board.

It will thus be seen that the act creates in each city a local Retirement Board, selected in the manner already indicated. In addition to the local Retirement Board in each city, it creates a Supervisory Board having jurisdiction and supervision over all annuity and benefit funds and all the local Retirement Boards in cities within the provisions of the act. We take judicial notice of the population of the cities and that there are some sixty cities in the State with a population which brings them within the provisions of the act. The annuity and benefit funds provided for in the act are to be raised by money deducted from the salaries of firemen and by contributions from taxes, made by the cities, subject to the provisions of the act.

There are no provisions in the act definitely fixing either the rate or amounts of the deductions to be made from the salaries of firemen, or the amounts to be paid by the cities. This is left entirely to the Supervisory Board. The only restriction in the act is the limitation on the deductions from the firemen's salaries to twelve per cent. There is also a general limitation on the rate of taxation for the purposes of the act. The act provides, in various sections, that the city "shall pay" the amount certified by the Supervisory Board out of deductions from the firemen's salaries and funds of the city. Section 48, which provides for the payment of disability benefits, provides that where the city is not in position to pay the amounts due from it, at the time the deductions are made

from the salaries of the firemen, it shall be charged with interest at the rate of three per cent until such payments are made.

The first objection urged against the validity of the act is that it is an attempt to vest the power of taxation in other than corporate authorities, and to give to the Retirement and Supervisory Board, the power to impose on cities obligations to be paid by taxation, in violation of section 9 of article IX of the constitution.

Section 20 provides that for the purpose of defraying the cost of installation and maintenance of the system provided for in the act to the first day of January, 1944, the local Retirement Boards of the several cities shall pay to the Supervisory Board their proportionate share of the amount estimated as necessary for the expense of the first annual convention, provided for in section 12. Section 20 further provides that subsequent to January 1, 1944, each local Retirement Board shall estimate the sum necessary to defray its costs for the following year. It is further provided that in making such estimate the local Retirement Board shall include the estimated amount which such local board will be required to pay to the Supervisory Board during the ensuing year; that one half of the total sum so estimated by the local board shall be deducted from the salaries of the firemen and the remaining one-half shall be paid by the city.

The Supervisory Board has unlimited powers relative to the incurring of expenses for the purposes mentioned in section 14, which have already been referred to. The argument is that the city is obligated by the act to pay one half, not of any actually determined amount of expenses, but one half of the amount estimated by the local Retirement Board to be incurred in the ensuing year, including in such estimate the amount the local Retirement Board will be required to pay to the Supervisory Board for the expenses incurred by it. It is said that the amount

of these estimated expenses, which the act requires the city to pay, rests only in the estimate of the local Retirement Board and in the amount fixed by the Supervisory Board to be paid to it by the local Retirement Board. It is contended that this constitutes the imposition of an indebtedness or liability against the city for one half the estimated amount of expenses, as to which the city has no voice.

The power to create a debt to be discharged by taxation is no different from the power to impose a tax. (*Lovingston* v. *Wider*, 53 Ill. 302.) We have already pointed out that the annual convention provided for by section 13 is given the power to fix the amount to be used for expenses by the Supervisory Board. The act places no limit on this power, or on the amount of expenses to be incurred. Following the fixing of the amount of such expenses, the Supervisory Board is required to certify to each local Retirement Board its proportion of such expenses. Thereafter, the local Retirement Board is required to make an estimate of the amount necessary to defray its expenses for the ensuing year, including in such estimate its proportionate share of the expenses of the Supervisory Board during such year. The act then imposes a liability for the payment of one half of such estimated amount upon the city. The obligation of the city is thus incurred solely by the acts of the annual convention, the Supervisory Board and the local Retirement Board. The amount to be paid by the city is fixed by them. Neither the city, nor any officer of the city, has anything whatever to do with the creation of this obligation, or with the determination of the amount. It is an indebtedness of the city, but the debt is not incurred by the corporate authorities of such city.

The legislature may not empower anyone other than the corporate authorities of a city to impose a debt or liability upon the city which requires a resort to taxation

to remove it. It is true the legislature has the power to impose the burden direct, but it has not done that in this case. The legislature may impose a burden upon a municipality to be paid by taxation. When it does so, however, it must either fix the amount of the indebtedness or confine it with certain defined limitations, or it must confer upon the corporate authorities the power to determine such amount. Here, the legislature did not attempt to confer the power to impose the burden of the payment of any definite amount of indebtedness, or within any fixed or determinable limits. It simply conferred upon the local Retirement Board, by its estimate, the power to determine the amount of the liability which the city should assume and pay. The estimate of the local Retirement Board must include the estimate of the Supervisory Board, certified by it to the local board. The result is that the amount for which the city is made liable is determined solely from the estimates of the two boards. Neither the local Retirement Board nor the Supervisory Board are corporate authorities. Yet they are empowered to determine the amount for which the city is liable. The city is required to pay that amount. The amount being fixed, not by the legislature or by the corporate authorities of the city, but by those who are not such corporate authorities, renders the act vulnerable to the objection that these provisions are an unlawful attempt to vest the power of taxation in persons who do not constitute the corporate authorities of the cities on which the liabilities are imposed, in violation of section 9 of article IX of the constitution.

Appellees' next contention is that the provisions with reference to the allowance of claims and for the payment of benefits under the act also violate section 9 of article IX of the constitution. The provisions attacked by this objection are found in sections 44, 46, 47, 48 and 49 of the act.

Section 44 provides for the distribution of benefits designated as "Child's Annuity" benefits. After fixing the amount of the benefits, and the manner in which claims for such benefits are to be allowed, that section provides that the Retirement Board of each city included within the provisions of the act shall estimate each year the amount which will be required to pay annuities to children of deceased firemen of such city, during the next succeeding year; that such amount shall be paid by such "city and the remaining cities" within the provisions of the act, in accordance with section 47, into the annuity and benefit fund of such city, from taxes levied and collected for the purpose of payment of such annuities.

Section 46 relates to a benefit designated as "Duty Disability Benefit." That section contains a like provision as to the estimate to be made annually by the Retirement Board and the payment of the same by the city, and the remaining cities included within the provisions of the act, as provided in section 44.

Turning to section 47, to which reference is made in sections 44 and 46, as to the manner of payment by the cities into the annuity and benefit fund, that section, after providing for the allowance of claims for duty disability benefit, child's disability benefit, compensation annuity, supplemental annuity, and child's annuity, in order to defray the cost of such benefits, provides:

"As soon as possible after the thirty-first day in the month of December of the first year after the year in which this Act shall come in force and effect, and as soon as possible after the thirty-first day in the month of December of each year thereafter, the supervisory board created under the provisions of this Act shall ascertain the total of the amounts paid, after a period of sixty (60) days shall have elapsed from the date when any such benefit or annuity shall become due and payable, by each city

included within the provisions of this Act, during the preceding calendar year, in such duty disability benefits, child's disability benefits, compensation annuities, supplemental annuities and child's annuities as shall have been approved for payment by said supervisory board, and each such city shall pay such proportionate part of the aggregate of the amounts so paid by all such cities during such calendar year which the aggregate of the salaries paid to firemen who were contributing for age and service annuity and widow's annuity purposes during such calendar year in such city bears to the aggregate of the salaries paid to all such firemen in all cities included within the provisions of this Act during such calendar year.

"The sum so ascertained by the said supervisory board as payable by each such retirement board shall be paid to the said supervisory board by the retirement board concerned immediately upon receipt of a written statement from the said supervisory board of the amount payable from such board, and the said supervisory board shall distribute to the several retirement boards, sums equal to the amounts so ascertained as being due to such retirement boards, as soon as possible or practicable after payments shall be made by such retirement boards."

As already indicated, these provisions of section 47, as to the manner of payment, are applicable to the payment of benefits under section 44 and section 46, which specifically refer to section 47, as to the time and manner of payment.

Section 48 provides for the payment of a benefit designated as "Ordinary Disability Benefit." In order to defray the costs of ordinary disability benefits, provided for in section 48, section 49, after first providing the method of the allowance of claims for such benefits, provides:

"As soon as possible after the thirty-first day in the month of December of the first year after the year in which this Act shall come in force and effect, and as soon

as possible after the thirty-first day in the month of December of each year thereafter, the supervisory board created under the provisions of this Act shall ascertain the total of the amounts paid after a period of sixty (60) days shall have elapsed from the date when any such payment of ordinary disability benefit shall become due and payable by each city included within the provisions of this Act, during the preceding calendar year, and each such city shall pay such proportionate part of the aggregate of the amounts so paid by all cities during such calendar year which the aggregate of the salaries paid to firemen who were contributing for age and service annuity and widow's annuity purposes during such calendar year in such city bears to the aggregate of the salaries paid to all such firemen in all cities included within the provisions of this Act during such calendar year.

"The sum so ascertained by the said supervisory board as payable by each such retirement board shall be paid to the said supervisory board by the retirement board concerned immediately upon receipt of a written statement from the said supervisory board of the amount payable from such board, and the said supervisory board shall distribute to the several retirement boards sums equal to the amount so ascertained as being due to such retirement board, as soon as possible or practicable after payments shall have been made by such retirement boards."

It will thus be seen that the estimates of the amounts necessary to pay child's annuity benefits under section 44, and duty disability benefits under section 46, and for the payment of ordinary disability benefits under section 48, are, under section 49, to be made by the Supervisory Board. The act provides that the aggregate estimated by the Supervisory Board shall be paid by *such city and the remaining cities included within the provisions of this act.* Each city is required to pay its proportionate share of such aggregate amount, such proportionate share to be deter-

mined in the proportion which the salaries paid to firemen in each city bears to the total of such salaries paid by all the cities within the provisions of the act.

Under these provisions, claims for benefits for the first sixty days are paid by the local Retirement Boards. After the expiration of sixty days, if the claims are allowed by the Supervisory Board, such benefits are thereafter paid by the local Retirement Boards, but the Supervisory Board reimburses the local boards for such payments. In order to raise funds for such reimbursement, the Supervisory Board, in effect, makes an assessment against each city within the provisions of the act. The assessment against each city is for its proportionate share of an amount equal to the total amount of benefits paid by all of the cities, within the provisions of the act, during the preceding calendar year. Each city is required to contribute to the fund, as its proportionate share of the aggregate amount of benefit paid by all cities, an amount computed on the basis which the aggregate of the salaries paid to firemen, who were contributing for age and service annuity and widow's annuity purposes in such city, bears to the aggregate amount of the salaries paid to all such firemen in all cities included within the provisions of the act.

The result is that a city in which no benefits have been paid is compelled to contribute to the benefits paid by all other cities within the provisions of the act its proportionate share, based upon the proportion which the salaries paid to firemen by it bears to the aggregate amount of salaries paid to firemen by all the cities within the provisions of the act. Thus the act creates a general benefit fund to which each city is compelled to contribute, not according to benefits, but according to the amount of salaries paid to firemen. The effect of these provisions is to impose upon each city within the provisions of the act the liability to pay benefits on behalf of each other city within the act. This is an inadmissible innovation in municipal

taxation. In *Morgan* v. *Schusselle,* 228 Ill. 106, it was said: "It has been heretofore frequently decided by this court that section 9 of article 9 of our present constitution is a limitation upon the power of the legislature to delegate the right of corporate or local taxation to any other than the corporate or local authorities of the district to be taxed, and that by the phrase 'corporate authorities,' as used in said section of the constitution, must be understood those municipal officers who are either directly elected by the people to be taxed or appointed in some mode to which they have given their assent."

In order to sustain the act, appellants rely largely upon *Board of Trustees* v. *Comrs. of Lincoln Park,* 282 Ill. 348. That case is not in point on the questions here involved and is not controlling.

Since the decision of this court in *Lovingston* v. *Wider,* 53 Ill. 302, the validity of the act here involved can hardly be considered a debatable question. In that case, after citing *People ex rel. McCagg* v. *Mayor of Chicago,* 51 Ill. 17; *People ex rel. Wilson* v. *Salomon,* 51 Ill. 37; *People ex rel. South Park Comrs.* v. *Common Council of Chicago,* 51 Ill. 58; and *Harward* v. *St. Clair and Monroe Drainage Co.* 51 Ill. 130, the court said:

"We held, in these cases, that the fifth section of the ninth article of the constitution, authorizing the legislature to give the corporate authorities of cities and towns the right of taxation for corporate purposes, was to be construed as a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities. We further held, that, by corporate authorities, as used in this clause of the constitution, must be understood those municipal officers who are either directly elected by the people of the municipality, or appointed in some mode to which they have given their assent. We further held, in the first of the above-cited cases, that the commissioners

of Lincoln Park were not corporate authorities, and in the last case, that the drainage company were not such authorities within the meaning of the constitution.

"These cases, in our judgment, are conclusive against the validity of the act under consideration. These police commissioners are not the corporate authorities of East St. Louis, and, therefore, can have no power of taxation. They are not elected by the people of that city, nor appointed in any mode to which the people have given their assent. The act creating them has never been accepted by the people or by the city council, but, on the other hand, as alleged in the bill, the council has constantly denied the authority of the commissioners. So far from being corporate authorities, in the sense in which this court has construed that phrase, these commissioners, by the act in question, are forced upon the people of this municipality, without reference to their wishes or consent, to hold over them the tremendous power of unlimited taxation, and, in the exercise of this power, to be placed entirely beyond the reach of those whose property is at their mercy. For the reasons given in the cases cited, such legislation can not be reconciled with the constitution."

The act here involved, after creating a local Retirement Board within each city within the provisions of the act, sets up a supergoverning body designated as a Supervisory Board. This board has jurisdiction over all the local Retirement Boards, and over all of the affairs of each city, with reference to the payment of annuities or benefits under the act. The Supervisory Board thus created is superimposed upon each city within the act. The Retirement Board in each city, and the Supervisory Board, are given power to impose obligations upon the cities to be paid by taxation, first, by making an estimate of the amount necessary to pay the cost of the administration of the system and requiring the payment of the estimated amount by the cities, and, second, the Supervisory Board

is given like powers under section 47, with reference to the payment of annuity benefits. It imposes an obligation upon each city included within the act to pay its proportionate share of the aggregate of all benefits paid in all of the cities, based upon the relative proportion which the amount of salaries paid to firemen in each city bears to the aggregate of salaries paid to firemen in all of the cities within the act. Such liabilities can be paid only with money raised by taxation. The act itself specifically provides that such payments shall be made from money so raised. · The act is a clear attempt to invest the Supervisory Board with the power of taxation. As pointed out by this court in *Lovingston* v. *Wider,* 53 Ill. 302, the power to create a debt to be discharged by taxation is substantially the same thing as the power to impose a tax. The result is the same.

Neither the local Retirement Boards nor the Supervisory Board, created by the act, are corporate authorities. They may not be lawfully invested either with the power to levy a tax or with the power to create a debt against a municipality, which must be paid with funds raised by taxation. The attempt by this act to confer such power is an attempt to vest the power to levy taxes in those who are not corporate authorities of the ·cities, in violation of section 9 of article IX of the constitution.

This conclusion as to the invalidity of the provisions of the act referred to renders the entire act invalid. It cannot be sustained. In view of this result, it is unnecessary to consider any of the other objections urged against the act.

The trial court did not err in striking the answers of the defendants and in entering judgment of ouster. The judgment of the circuit court of Sangamon county is affirmed.

*Judgment affirmed.*